In re the Marriage of David G. DOREN, Petitioner, Appellant,

v.

Colleen A. DOREN, Respondent.

No. C8-88-1043.

Court of Appeals of Minnesota.

Nov. 15, 1988.

Randall J. Fuller, Coleen J. Carlstedt–Johnson, Anoka, for appellant.

John F. Markert, Bloomington, for respondent.

## OPINION

LANSING, Judge.

In a post-dissolution action for modification of custody, the trial court transferred custody of two of Colleen and David Doren's four children to David Doren and continued custody of the youngest child in Colleen Doren.[1]

Both parties moved for amended findings, and David Doren moved for a new trial. All post-trial motions were denied and David Doren appeals. We affirm in part and remand the issue of compensatory visitation.

## FACTS

In a 1983 marital dissolution Colleen Doren obtained custody of the couple's four children: David, Jr., 14; Chelsey, 10; Elliot, 9; and Alexis, 6. Several months later the children told David Doren that they did not want to see him. He discontinued his visitation but believed that Colleen Doren

---

1. The oldest child became emancipated during the pendency of the proceedings.

coerced the children into refusing to see him.

In the spring of 1985, he received a phone call from Elliot complaining that Colleen Doren was beating him, and requesting that he be picked up. After hearing Elliot's reports of Colleen Doren's treatment of the children, particularly David, Jr. and Elliot, David Doren called Hennepin County Child Protection and Hennepin County opened a file on the case. Elliot lived with his father for one year and then returned to his mother's home.

In May 1986 David, Jr. and Elliot, then aged 17 and 12, ran away from Colleen Doren's home. In the summer of 1986 Chelsey, then aged 13, also ran. The three children went to live with their half-brother, Alec Doren, and his wife. In September 1986 police took the three children to St. Joseph's Home for Children. David, Jr. left St. Joseph's to live with his paternal grandmother, Margaret Doren. He became emancipated in December 1986. Elliot was adjudicated delinquent and placed under the jurisdiction of the Hennepin County Juvenile Court. Chelsey left St. Joseph's to live with David Doren and his present wife.

In August 1986 David Doren moved to modify custody, alleging that the three older children had fled Colleen Doren's home because of her "bizarre" behavior and that it was in the best interests of all four children to be in his custody. The court ordered a custody study. Based on the study the court found that the Doren family was "extremely dysfunctional," and that Colleen Doren had denied David Doren visitation with Alexis. The court ordered independent psychological evaluations of both parents and the children to be completed before the modification hearing.

After a four-day modification hearing, the trial court found that Colleen Doren physically and psychologically abused David, Jr. and Elliot; that the other children had witnessed her abuse of David, Jr. and were, with the exception of Alexis, subjected to abusive discipline; and that Colleen Doren "persistently and willfully denied and interfered with" David Doren's visitation. The court transferred custody of Chelsey and Elliot (effective on his release from juvenile court detention) to David Doren, continued Alexis in Colleen Doren's custody, and awarded $5,000 in attorneys fees to Colleen Doren.

## ISSUES

1. Did the trial court abuse its discretion by failing to modify custody of all three children?

2. Did the trial court err in failing to order compensatory visitation?

3. Did the trial court abuse its discretion in allowing attorney fees?

## ANALYSIS

### I.

David Doren challenges the trial court's retention of Alexis' custody in Colleen Doren. He argues that her abuse of David, Jr. and Elliot, and her interference with visitation require that Alexis' custody be modified.

If a change has occurred in the circumstances of the child or custodian, and if modification is necessary to serve the best interests of the child, the court may order modification of custody. Such a modification is appropriate if the current arrangement endangers the child's physical or emotional health or impairs emotional development and is so detrimental to the child that the harm likely to be caused by a change in custody is outweighed by its advantages. Minn.Stat. § 518.18(d) (1987). Appellate review of custody determinations is restricted to determining whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (1985).

The trial court found that, while Alexis and her mother have a "mutually dependent relationship," Alexis' physical and emotional health are not endangered, nor is her emotional development impaired. This finding is based on the testimony and recommendation of Virgil Burns, a clinical social worker who has counseled Colleen Dor-

en and the children since 1979. It is also based on Alexis' preference to remain with her mother. No witness testified that Alexis had been abused or immoderately disciplined by her mother. The court also noted that Alexis and Chelsey do not have a close sibling relationship, and found that David Doren's present wife is not willing to have Alexis in her home.

■ The overriding consideration in a custody determination is the welfare of the children, and the trial court has broad discretion in determining custody matters. *Hanson v. Hanson,* 284 Minn. 321, 324, 170 N.W.2d 213, 215–16 (1969). The trial court had the opportunity to weigh the conflicting evidence and consider the separate needs of each of the Doren children. Although we believe that the evidence would also support a decision to modify Alexis' custody, it is the role of the trial court to make that determination. So long as there is evidence to support the trial court's decision, there is no abuse of discretion. *See Sefkow v. Sefkow,* 427 N.W.2d 203, 211 (Minn.1988).

■ We recognize that split custody of siblings is not favored. However, a decision resulting in divided custody is not conclusively erroneous. *See id.* at 215. Where, as here, other factors outweigh the need for siblings to reside together, split custody may be appropriate. Under the circumstances of this case the trial court's decision is not an abuse of discretion.

David Doren also challenges two trial court evidentiary rulings, the admission of Virgil Burns' testimony and the refusal to receive the entire child protection case record into evidence.

■ A trial court's ruling, qualifying an expert witness, will not be reversed unless it is based on an erroneous view of the law or is clearly not justified by the evidence. *Hagen v. Swenson,* 306 Minn. 527, 528, 236 N.W.2d 161, 162 (1975). Burns has 30 years experience as a social worker and has worked with the Doren family for eight years. The record supports the trial court's ruling.

■ David Doren claims, based on the public records exception to the hearsay rule, Minn.R.Evid. 803(8), that the entire child protection case record should have been admitted in evidence. The parts of the file relating to events in 1986 and 1987 were admitted. Because the parts of the file not received were of limited relevance and also repetitious, the trial court's refusal to admit the entire file was not an abuse of discretion. *See Hase v. American Guaranty and Liability Insurance Co.,* 312 Minn. 271, 251 N.W.2d 638, 641 (1977).

## II.

In 1986 the legislature enacted remedial legislation to deal with the problem of custodial parents' wrongful denial of visitation. The legislation provided:

If the court finds that the noncustodial parent has been wrongfully deprived of the duly established right to visitation, the court shall order the custodial parent to permit additional visits to compensate for the visitation of which the noncustodial parent was deprived. Additional visits must be:

(1) of the same type and duration as the wrongfully denied visit;

(2) taken within one year after the wrongfully denied visit; and

(3) at a time acceptable to the noncustodial parent.

Minn.Stat. § 518.175, subd. 6 (1986).

The trial court found that Colleen Doren had consistently and intentionally interfered with and denied David Doren's visitation with all of the children, but especially Alexis. The court further found that this denial of visitation has precluded the development of a parent-child relationship between Alexis and David Doren, and that as a result Alexis is afraid of her father.

■ Public policy, private interests and legislative enactments uniformly affirm the importance of a child's relationship to each parent. The specific language of the statute providing remedial visitation cannot be overlooked. Although some circumstances may require that visitation be curtailed in the best interests of the child, those circumstances do not exist here. There is no

basis in the record or in the findings for the denial of the additional visitation. The trial court erred by neglecting to allow David Doren compensatory visitation. We remand for entry of an order for compensatory visitation in accordance with Minn. Stat. § 518.175, subd. 6.

### III.

David Doren contests the court's allowance of $5,000 attorney fees to Colleen Doren. He asserts that Colleen Doren's behavior in denying court-ordered visitation caused the litigation and should preclude an award of attorney fees.

 The court may provide for reasonable attorney fees in a dissolution case. Minn.Stat. § 518.14 (1986). The determination should be based on the financial resources of the parties. *Davis v. Davis*, 394 N.W.2d 519, 523 (Minn.Ct.App.1986). The decision rests almost entirely within the discretion of the trial court and may not be disturbed absent a clear abuse of discretion. *Kirby v. Kirby*, 348 N.W.2d 392, 394 (Minn.Ct.App.1984). The record shows that both parties contributed to the length and cost of the proceedings. Although a part of the proceedings relates directly to a denial of visitation, the major part relates to the custody modification. The trial court did not abuse its discretion by allowing Colleen Doren a portion of her attorney fees.

### DECISION

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.