**In re the Marriage of Kristine Anne SCHISEL, petitioner, Appellant,**

v.

**Daniel Todd SCHISEL, Respondent.**

**No. A08–0190.**

Court of Appeals of Minnesota.

March 10, 2009.

Julia Ketcham Corbett, Kevin A. Velasquez, Blethen, Gage & Krause, PLLP, Mankato, MN, for appellant.

Ryan B. Magnus, Stacey R. Edwards Jones, Zack, Jones & Magnus, Mankato, MN, for respondent.

Considered and decided by STAUBER, Presiding Judge; KALITOWSKI, Judge; and SHUMAKER, Judge.

## OPINION

SHUMAKER, Judge.

Appellant-mother, as joint physical custodian and primary caretaker of the parties' minor children, challenges the district court's restriction of the children's residence to the Mankato area, arguing that the court lacks any authority to impose an in-state residence restriction on minor children and that, in any event, such restriction is not in the children's best interests.

She also challenges the court's award of a parcel of unimproved real estate to respondent; the court's calculation of her income for child-support purposes; and its failure to properly apply the *Hortis/Valento* adjustment. We affirm in part, reverse in part, and remand.

## FACTS

The parties to this appeal dissolved their marriage after 11 years. They and their two children—ages 6 and 8 at the time of the dissolution proceeding—lived in Mankato. They resolved many issues through stipulation, including an award of joint legal and physical custody of the children. Unresolved issues were tried to the district court. Of those, appellant-mother challenges on appeal the court's imposition of an in-state geographical restriction on the children's residence; the court's calculation of child support; and the court's award to respondent-father of a parcel of unimproved real estate located on the same block as appellant's homestead.

## ISSUES

1. Does the district court have the authority to impose an in-state geographical restriction on the residence of minor children whose physical custody is awarded jointly to the parents?

■ 2. Was the district court's determination that an in-state geographical restriction on minor children's residence is in their best interests principally because they have become ingrained in the community a sufficient basis for such restriction?

3. Did the district court err in calculating a self-employed joint physical custodian's income for child support by failing to consider her business expense deductions, failing to apply the FICA/self-employment tax deduction rate, and failing to make the

*Hortis/Valento* adjustment based on actual parenting time shared by the parties?

4. Did the district court abuse its discretion by awarding to respondent an unimproved parcel of real estate adjacent to appellant's homestead despite the court's determination that separation was necessary for purposes of privacy?

## ANALYSIS

### I.

In its findings of fact, the district court noted that appellant "has been adamant throughout these proceedings that she be allowed to move the children's primary residence to Lakeville, MN." The court found that such a move would "benefit only ... the [appellant] and [be a] detriment to the Respondent and children and [would not be] in the children's best interest." The court also found "that there has been a clear showing that maintaining the residence of the children in Mankato, MN is in their best interests." The court then awarded joint legal and physical custody to the parties and ordered that the "children's primary residence shall be with [appellant] in Mankato."

Appellant challenges both the district court's authority to restrict the children's primary in-state residence and the court's findings and conclusion that such a restriction is in the children's best interests.

Appellant argues that although there is statutory and caselaw authority for the district court's imposition of conditions and restrictions on a child's residence when a custodial parent desires to relocate outside Minnesota, there is no comparable authority when a parent, who is awarded the primary residence, desires to relocate within Minnesota. She further argues that "where an in-state relocation [is] requested at the time of an initial custody determination ... a geographical restriction is contrary to law and impermissible, and requires reversal," and cites *Sefkow v. Sefkow*, 372 N.W.2d 37 (Minn.App.1985), *remanded on other grounds*, 374 N.W.2d 733 (Minn.1985), as controlling authority. She also cites as authority for this proposition *Imdieke v. Imdieke*, 411 N.W.2d 241 (Minn.App.1987), *review denied* (Minn. Oct. 30, 1987), which cites *Auge v. Auge*, 334 N.W.2d 393 (Minn.1983), *superseded by statute*, Minn.Stat. § 518.175, subd. 3(b), (c) (2006), *as recognized in Goldman v. Greenwood*, 748 N.W.2d 279, 283 n.5 (Minn.2008), for the proposition that custody cannot be based on the condition that a parent live in a certain area, *id.* at 244; *Ryan v. Ryan*, 383 N.W.2d 371, 372–73 (Minn.App.1986), *review denied* (Minn. May 16, 1986), which in dictum in a footnote cites *Sefkow* for the impropriety of an in-state restriction; and *Bateman v. Bateman*, 382 N.W.2d 240 (Minn.App.1986), *review denied* (Minn. Apr. 24, 1986), which relied on *Sefkow* as controlling.

We begin by rejecting, as controlling authority here, any case in which a dispositive issue is a parent's relocation to another state or country. Although the fundamental "best interests" principle controls those cases, as it does here, a relocation outside Minnesota potentially raises issues and complications that will not exist if the parties and the children remain in Minnesota. An out-of-state move can raise jurisdictional and legal procedural issues, and logistical concerns, such as the retention of new counsel in the foreign state, that will not likely arise in Minnesota. Thus, *Auge*, a case involving a relocation from Minnesota to Hawaii, does not control an in-state relocation.

*Sefkow* then is offered as the precedent on this issue. That case dealt with split physical custody of two minor children. The father contended that the mother

should not have been given physical custody at all because her prospective educational plans would take her out of the Fergus Falls area where the parties and their children resided. *Sefkow*, 372 N.W.2d at 46. The district court found the father to be the children's primary parent and, although the court awarded split custody, it conditioned the mother's award on her remaining in the Fergus Falls or Fargo–Moorhead areas. *Id.* at 45, 46.

The court of appeals held that the evidence showed that the mother was the children's primary parent and that it was in the children's best interests that they live together. *Id.* at 45. With respect to the imposition of the residential condition, the court of appeals relied on *Auge* for the proposition that *"unnecessary* limits on movement of the family unlawfully interfere with the stable circumstances of a child," and held that the "residential conditions on the placement of the *Sefkow* children are *unnecessary* and unlawful." *Id.* at 46, 47 (emphasis added). Nothing in *Sefkow* creates a blanket rule that restrictions on in-state residence are per se unlawful. Rather, *Sefkow* stands for the proposition that such restrictions are unlawful if they are unnecessary. The *Sefkow* holding was based on the district court's error as to which parent was primary, the appellate court's disapproval of the split-custody award, and the failure of the record to show that a residential restriction was necessary to serve the children's best interests. The later cases on which appellant relies have cited *Sefkow* for a proposition that is broader than that for which the case stands.

Had the *Sefkow* court intended to create a new rule of law, a categorical prohibition of a restriction on the intrastate residency of minor children in a custody award, it would not have used the qualifier "unnecessary." Additionally, it is unlikely that the *Sefkow* court, an intermediate appellate court, was by its decision presuming to create a significant new rule of law. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988) ("The function of the court of appeals is limited to identifying errors and then correcting them.").

Thus, we look principally to the controlling statute to determine the district court's authority to restrict a child's in-state residence. Minn.Stat. § 518.17, subd. 3(a)(2) (2008): "[I]n a dissolution . . . the court shall make such further order as it deems just and proper concerning . . . [the minor children's] physical custody and residence. . . ." This authority is modified by the fundamental requirement that the order serve the children's best interests. *See* Minn.Stat. § 518.17, subd. 3(a)(3) (2008) (stating "[T]he court shall consider the best interests of each child"); Minn. Stat. § 518.17, subd. 1 (2008) (listing relevant factors to consider in determining the best interest of a child). Therefore, if there is to be any restriction on the children's residence, the order further requires the restriction be necessary to serve the children's best interests. *Sefkow*, 372 N.W.2d at 46, 47.

In their respective arguments, the parties have not principally relied on Minn. Stat. § 518.17, subd. 3(a)(2). The term "residence" is not defined there. Nor is it defined in Minn.Stat. § 518.003 (2008), the definitions section of chapter 518. When no special or technical definition of a term is provided in a statute, we are to construe the term according to its common meaning and usage. Minn.Stat. § 645.08(1) (2008). "Residence" is defined in the dictionary to mean the "place in which one lives; a dwelling." *The American Heritage Dictionary of the English Language* 1535 (3d ed.1992). Although "residence" could mean "with whom" a child is to live, its common meaning refers to "place," or ge-

ography. That the legislature intended "residence" to include "place" is borne out by the custody definitions. " 'Physical custody and residence' means the routine daily care and control *and* the residence of the child." Minn.Stat. § 518.003, subd. 3(c) (emphasis added). " 'Joint physical custody' means that the routine daily care and control *and* the residence of the child is structured between the parties." Minn. Stat. § 518.003, subd. 3(d) (emphasis added). If the legislature intended to address only the concept of "custodian," that is, the person with whom the child is to live, it would be redundant to also use the term "residence" in these definitions. Recognizing and applying the common meaning of "residence" and accepting that the legislature did not intend a superfluous redundancy when it used that term, we hold that "residence" includes "place."

We hold that the district court enjoys the authority to restrict the in-state residence of a minor child upon a showing that the restriction is necessary to serve the child's best interests. The district court did not err in assuming that it had such authority here.

## II.

■■■ The bedrock principle underlying any decision affecting the custody of minor children is that their best interests must be protected and fostered. A child's best interests are the fundamental focus of custody decisions. *Frauenshuh v. Giese,* 599 N.W.2d 153, 158–59 (Minn.1999) (acknowledging children's best interests are "paramount" concern in resolution of custody issues); *Pikula v. Pikula,* 374 N.W.2d 705, 711 (Minn.1985) (stating guiding principle "in all custody cases" is best interests of child); *State ex. rel. Flint v. Flint,* 63 Minn. 187, 189, 65 N.W. 272, 272 (1895) (noting "paramount" question in custody dispute is "what would be most for the

benefit of the infant"); *Vangsness v. Vangsness,* 607 N.W.2d 468, 476 (Minn. App.2000) (stating "[a] child's best interests are the fundamental focus of custody decisions"). In determining issues of custody and residence under the authority granted in Minn.Stat. § 518.17, subd. 3(a)(2), the district court enjoys broad discretion. *Pikula,* 374 N.W.2d at 710. The appellate courts will not reverse the district court's custody decision absent a showing of a clear abuse of discretion. *Id.* The district court abuses its discretion if its findings are clearly erroneous. *Id.* The court also abuses its discretion if its findings are insufficient to support its custody ruling. *See In re Welfare of N.T.K.,* 619 N.W.2d 209, 211–12 (Minn.App.2000) (noting that "[w]ritten findings are essential to meaningful appellate review").

Through its findings of fact, the district court addressed all of the best-interests factors in Minn.Stat. § 518.17, subd. 1. Several findings are particularly significant to our assessment of the court's residency restriction.

The court found that each party acknowledges the other as an excellent parent and that the parties appear to agree that it is in the children's best interests that their primary residence, at least during the school year, be with appellant. The court found that, although both parties have been involved in their children's lives and have been caretakers of the children, the appellant has been the primary caretaker. She "rather than Respondent is better able to meet the emotional needs of the children and is more nurturing." The court set forth in detail the many particulars of the appellant's primary caretaking functions, noting that she "has adjusted her work schedule so that she can be home in the mornings and evenings on a consistent basis." By contrast, the court found that the respondent's varying and

inflexible work schedule as a police commander does not permit the same type or degree of consistency of involvement in the children's daily lives.

The court found that the children "have strong relationships" with their paternal and maternal grandparents, the former who live in Mankato and the latter who reside in the Twin Cities. Indicating that, because of the respondent's work schedule, his mother "formerly cared for the children," the court found that "[i]t would be beneficial for the parties in their parenting to have more separation between Respondent's mother and the children so that she can assume a grandmother role and allow the parties to parent."

In rejecting the appellant's request that she be allowed to relocate the children's primary residence to Lakeville, the court also rejected, without comment, the recommendation of the court-ordered, jointly-selected, neutral custody evaluator's recommendation that the children be allowed to reside with the appellant in her new location. The court found that "allowing the [appellant] to move the children's residence provides benefit only to the [appellant] and detriment to the Respondent and children and is not in the children's best interest." The court found that the children, ages 6 and 8 respectively, at the time of the dissolution proceeding, have lived in Mankato for their entire lives, have family and friends in the area, and are involved in church and sports in Mankato. "In short," the court found, "the children have been ingrained into the Mankato community."

It is this latter finding that appears to be the court's principal reason for imposing the residence restriction. Despite the court's indication that a relocation would be a "detriment" to the children, there were no findings to support that suggestion. For instance, there were neither findings nor evidence that Mankato offers services or activities that would meet special needs of the children that are either unavailable in the proposed new location or are not readily or practically accessible there. Nor was there evidence or any finding that the children would be harmed in some way by a change of residence. On the contrary, the evidence shows that they both have the capacity to adjust and adapt to a new home.

■ That minor children are "ingrained" in a particular community is not alone sufficient to support a geographical restriction of their primary residence to that community. If that were the case, it is unlikely that any custodial parent would be allowed to relocate the primary residence of school-age children either within or outside of the state, for it could be persuasively argued that the children had become "ingrained" in their school and local activities. Although local involvement is an important consideration, there needs to be a showing as to why that local involvement has sufficiently unique or compelling attributes to meet the *Sefkow* requirement of demonstrating that a residence restriction is necessary to serve the children's best interests.

There has been no such showing here. Furthermore, the mere fact that a residence relocation might collaterally benefit one parent and create a detriment to the other is not sufficient to justify a residence restriction; the proper focus is always to be the children's best interests.

Thus, we hold that the court's findings are insufficient to demonstrate a necessity for a geographical restriction on the children's primary residence and we deem it appropriate that the matter be remanded for further proceedings on this issue. In so holding, we do not intend to imply a preference for any particular outcome on the issue, which will depend on whether the *Sefkow* necessity can be shown.

### III.

As of the date of the filing of this dissolution proceeding, July 21, 2006, child-support calculations were to be made in accordance with the provisions of Minn.Stat. Ch. 518 and were to be based on net income (2004). Net income was to be determined by ascertaining gross income and then deducting certain items. Minn.Stat. § 518.551, subd. 5(b) (2004). Two proper deductions were FICA/Self-employment tax and the ordinary and necessary business expenses of a self-employed person. Minn.Stat. § 518.551, subds. 5(b)(iii), 5b(f) (2004). Furthermore, if, as here, the court awarded the parties joint physical custody of their children, an additional adjustment in the support amount was necessary to reflect the parenting-time split incident to that award. *Hortis v. Hortis*, 367 N.W.2d 633, 636 (Minn.App.1985).

*Business Expense Deduction*

■ The district court's determination of net income must be based in fact and it will not be overturned unless it is clearly erroneous. *Davis v. Davis*, 631 N.W.2d 822, 827 (Minn.App.2001) (citation omitted). If the court's determination of income is challenged on appeal, we look to both the court's findings and the evidence of record to ascertain whether there has been clear error. *Rutten v. Rutten*, 347 N.W.2d 47, 50. We are unable to conduct a meaningful review if an essential finding has been omitted. *Putz v. Putz*, 645 N.W.2d 343, 348 (Minn.2002).

■ The court found that appellant is a self-employed commercial real estate broker whose earnings are derived entirely from commissions. For the three-year period immediately preceding the dissolution proceeding, the court calculated her average *gross* annual wage "prior to deduction of her ordinary and necessary business expenses...." Although the court deducted various sums from appellant's gross income to determine her net income available for child support, its findings are silent as to her business expenses, neither indicating whether there were any such expenses nor, if there were, the extent to which they were deductible. Appellant argues that she introduced evidence of deductible business expenses and that respondent failed to challenge either the fact or the amount of such expenses. The record appears to support her argument. The court in its discretion must decide what expenses, if any, are allowable deductions. Presumably any allowance will change appellant's net income to an amount lower than that shown in the court's findings. The court's failure to make specific findings as to appellant's claimed business expenses requires that we reverse the court's child-support calculation and remand this issue for further proceedings as the district court deems appropriate.

*FICA/Self–Employment Tax*

■ The court abuses its discretion if it erroneously applies the law to the case. *Pikula*, 374 N.W.2d at 710. In determining net income available for a child-support calculation, the court is to deduct Social Security (FICA) contributions. Minn.Stat. § 518.551, subd. 5(b)(iii). The deduction rate for a self-employed individual, such as appellant, is 15.3% of her self-employment income. 26 U.S.C. § 1401 (2000). The court applied the employed wage-earner rate of 7.65%, thus inflating appellant's net income. In doing so, the court abused its discretion and this determination must be reversed and the issue remanded for further appropriate proceedings.

*Hortis/Valento Calculation*

When parties to a marriage dissolution are awarded joint physical custody of their children, child support is to be calculated according to the support guidelines in Minn.Stat. § 518.551, subd. 5(b), as ad-

justed under the so-called *Hortis/Valento* formula to reflect the periods of actual custody the respective parents enjoy. *Schlichting v. Paulus,* 632 N.W.2d 790, 793 (Minn.App.2001) (holding that *Hortis/Valento* formula offsets the support amount when joint physical custody is awarded). We apply the abuse-of-discretion standard to the district court's application of *Hortis/Valento. Blonigen v. Blonigen,* 621 N.W.2d 276, 282 (Minn.App. 2001), *review denied* (Minn. Mar. 13, 2001).

▆▆▆ The district court applied the child-support guidelines with a *Hortis/Valento* adjustment, saying: "[T]he Court believes the ultimate parenting time schedule will be approximately 60/40. Respondent will be with the children 40% of the time and [appellant] will be with the children the other 60% of the time." The court found that respondent's "work schedule makes a set schedule for parenting time impractical" and that respondent has not "demonstrated flexibility in his schedule during the pendency of this proceeding." The court properly found that a specific parenting-time schedule would enhance the parties' cooperation and communications, although the schedule was to be used merely as a "framework" and not, as the court expressed it, as something "set in stone." It is apparent that the parenting-time schedule the court ordered was primarily aspirational and was designed to provide the parties with reasonable flexibility. For purposes of parenting time, that approach is laudable. But for purposes of *Hortis/Valento,* the court is required to apply the formula to actual time. *In re Bender,* 671 N.W.2d 602, 608 (Minn. App.2003) (stating that under the *Hortis/Valento* formula, "separate support obligations are set for each parent, but only for the periods of time that the other parent has physical custody of the children" (citing *Schlichting,* 632 N.W.2d at 792)).

Appellant argues that the evidence does not support the conclusion that respondent will spend 40% of the time with the children under the specific schedule set by the court. Rather, appellant contends, respondent will spend about 22% of the time with the children and she will have the remaining 78%. It does appear from the record that, according to the court's parenting-time schedule, the parties' division of time will be substantially closer to the 78/22 split appellant claims than the 60/40 split the court believed would be "the ultimate parenting time schedule." Thus, the difference is not de minimus, and the court's determination must be reversed and the issue remanded for further appropriate proceedings.

### IV.

▆▆▆ The district court enjoys "broad discretion in evaluating and dividing property in a marital dissolution and will not be overturned except for abuse of discretion. We will affirm the trial court's division of property if it had an acceptable basis in fact and principle even though we might take a different approach." *Antone v. Antone,* 645 N.W.2d 96, 100 (Minn.2002). The district court abuses its discretion in dividing property if its findings of fact are "against logic and the facts on [the] record." *Rutten,* 347 N.W.2d at 50.

▆▆▆ The parties owned their homestead and two adjacent vacant lots. The court awarded the homestead to the appellant, finding that it is "in the children's best interest that [appellant] be awarded the homestead to maintain their primary residence." Indicating a concern to protect the privacy of appellant and the children when they are with her, the court ordered the lot closest to the homestead to be sold. The court awarded the other lot to respondent but with a restriction as to usage: "However, Respondent shall take

no action to improve the lot, other than routine maintenance, until such time as [appellant] has moved from the homestead or both children attain the age of 18 years, or graduate from high school, whichever occurs last."

Appellant contends that the award of this parcel, which is one lot away from the homestead, contradicts the court's determination that appellant's privacy must be protected and conflicts with the facts in the record. She argues that the undisputed evidence shows that the lot requires weekly maintenance and that the respondent "has interfered with her parenting time and privacy and distracted the children by being present in the neighborhood to perform maintenance and dropping in to visit neighbors during her scheduled time with the children."

The record does not show that respondent has intentionally interfered with the privacy of appellant and the children by his incidental presence on the vacant lot for the purpose of maintaining it. Nor does the record support an inference that respondent's conduct while on the lot was designed to distract the children. Interference might be inferred by repeated unnecessary visits to the property, or distracting conduct not reasonably related to maintenance activities, or an unreasonably prolonged presence on the property. The record shows none of those circumstances.

The district court properly exercised its discretion by restricting respondent's use of the property in such a way as to prohibit continuous occupation or presence, thus evincing an effort to reasonably safeguard appellant's privacy interests while also supporting the right of respondent, as property owner, to keep his land in good condition. The balance the court achieved through this restricted award is neither against logic nor in conflict with the record. We affirm the court's disposition of the parties' vacant lot.

## DECISION

The district court did not abuse its discretion by awarding to respondent an unimproved parcel of real estate adjacent to appellant's homestead because the court restricted use of the parcel so as reasonably to ensure appellant's privacy. We affirm this issue.

Because the court failed properly to compute appellant's child-support obligation by omitting business expense deductions, by applying the incorrect FICA table when determining income, and basing the *Hortis/Valento* adjustment on speculation, we reverse and remand this issue.

Because the district court's findings were insufficient to show the necessity of an in-state geographical restriction on the minor children's residence, we reverse and remand this issue.

**Affirmed in part, reversed in part, and remanded.**