In re the Marriage of Michelle Beth
KREMER, petitioner,
Respondent,

v.

Robbie Michael KREMER, Appellant.

No. A12–0699.

Court of Appeals of Minnesota.

Feb. 19, 2013.

Review Denied April 16, 2013.

William J. Wetering, Andrew M. Titus, Hedeen, Hughes & Wetering, Worthington, MN, for respondent.

Kay Nord Hunt, Marc A. Johannsen, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; HUDSON, Judge; and KIRK, Judge.

## OPINION

KIRK, Judge.

In this marital-dissolution appeal, appellant-father argues that the district court (1) abused its discretion by granting sole physical custody of the child to respondent-mother; (2) erred by not addressing mother's relocation to Iowa under Minn. Stat. § 518.175, subd. 3; and (3) abused its discretion by denying his motion for a new trial. We conclude that the district court was not required to analyze whether mother's relocation to Iowa is in the child's best interests under Minn.Stat. § 518.175, subd. 3, because (1) that statute applies only to a parent's relocation postdecree, and (2) in making its custody determination, the district court analyzed similar best-interests factors under Minn.Stat. § 518.17, subd. 1(a). We also conclude that the district court did not abuse its discretion by granting sole physical custody of the child to mother or by denying father's motion for a new trial and, therefore, we affirm.

## FACTS

Appellant Robbie Michael Kremer (father) and respondent Michelle Beth Kremer (mother) were married in March 2001. Their daughter, M.L.K. (the child), was born in February 2008. Father is a farmer, and mother lived with him on his farm during their marriage. Mother has two sons and a daughter from a previous marriage and, during her marriage to father, shared joint custody of her three older children with her former husband.

On April 8, 2010, mother petitioned the district court for dissolution of her marriage to father and for legal and physical custody of the child. During the pendency of the dissolution proceeding, mother moved to Estherville, Iowa, to be closer to her boyfriend, with whom she began a relationship several months earlier while she was in Iowa caring for her dying father. As a result of her separation from father and her new relationship, mother's relationship with her sons deteriorated. Mother currently has sole physical custody of her older daughter, but her relationship with her sons is strained.

The district court ordered temporary joint legal and joint physical custody of the child and established a custody schedule that required the child to alternate weeks with mother and father. The district court appointed a custody evaluator to provide a recommendation regarding the child's physical and legal custody. In her report and trial testimony, the custody evaluator recommended that the district court award joint legal custody of the child to mother and father and sole physical custody to mother.

Following a trial in October 2011, the district court granted joint legal custody of the child to mother and father and sole physical custody to mother. Father moved for an amended order and/or a new trial, arguing that the district court failed to adequately examine the best-interests factors under Minn.Stat. § 518.17, subd. 1(a), and address whether mother's move to Iowa is in the child's best interests. He also contended that the custody evaluator's recommendation was biased and not supported by the greater weight of the evidence. The district court denied the motion.

This appeal follows.

## ISSUES

1. Did the district court abuse its discretion by granting sole physical custody of the child to mother?

2. Did the district court err by not addressing mother's relocation to Iowa under Minn.Stat. § 518.175, subd. 3, in its custody order?

3. Did the district court abuse its discretion by denying father's motion for a new trial?

## ANALYSIS

I. **The district court did not abuse its discretion by granting sole physical custody of the child to mother.**

Father argues that the district court abused its discretion by granting sole physical custody to mother. "Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). This court will not set aside a district court's findings of fact unless they are clearly erroneous. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn.App.2000). A finding is clearly erroneous if this court is left with the definite and firm conviction that a mistake has been made. *Id.* We view the record in the light most favorable to the

district court's findings and defer to the district court's credibility determinations. *Id.* If there is evidence to support the district court's decision, there is no abuse of discretion. *Doren v. Doren,* 431 N.W.2d 558, 561 (Minn.App.1988). But "[t]hat the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Vangsness,* 607 N.W.2d at 474.

■ The district court's custody determination must center on the child's best interests. *Id.* at 476; *see also* Minn.Stat. § 518.17, subd. 3(a)(3) (2012). To determine the child's best interests, the district court must consider and balance all relevant factors, including 13 statutorily enumerated factors. Minn.Stat. § 518.17, subd. 1(a) (listing best-interests factors). The district court may not rely on one factor to the exclusion of the others and must make detailed findings regarding each factor, explaining how they led to its conclusions and its determination of the child's best interests. *Id.*

Father contends that the district court failed to address each of the best-interests factors under Minn.Stat. § 518.17, subd. 1(a). He argues that the district court did not make particularized findings regarding four factors: "the interaction and interrelationship of the child with a parent or parents, siblings, and any other person who may significantly affect the child's best interests"; "the child's adjustment to home, school, and community"; "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity"; and "the permanence, as a family unit, of the existing or proposed custodial home." *See* Minn.Stat. § 518.17, subd. 1(a)(5)-(8).

The district court did not specifically set forth each best-interests factor and identify how each of its findings was related to each factor. But the district court made particularized findings that encompassed each factor and specifically stated that it made "its findings using the best interest factors as laid out in Minnesota Statute 518.17," and that the custody evaluator's report and supporting testimony were "thorough, credible and not overly biased." The four best-interests factors that father challenges are analyzed below.

**A. The child's interaction and interrelationship with her parents, siblings, and others who significantly affect her best interests.**

■ Father argues that the district court failed to address "the interaction and interrelationship of the child with a parent or parents, siblings, and any other person who may significantly affect the child's best interests." *See* Minn.Stat. § 518.17, subd. 1(a)(5). The district court found that both mother and father treat the child well, want to be active in her life, have an intimate relationship with her, and are capable of providing her with love, affection, and guidance. The district court also found that both sets of the child's grandparents have significant positive involvement in her life. Mother and father agree that the child has a positive and regular relationship with both of her parents, her paternal grandparents, and her maternal grandmother.

Father contends that the district court failed to address the child's relationship with her half brothers. The district court found that the child has a close relationship with her half sister, who currently lives with mother, and that mother's relationship with her sons is "strained." These findings are supported by the record. In her report, the custody evaluator stated that when mother and father lived together, the child spent time with her half brothers and half sister every other week, and while the child currently sees her half

sister whenever the child is with mother, she does not see her half brothers regularly. The custody evaluator observed that the child's half brothers have limited contact with mother and the child does not currently have a significant relationship with them. The district court adequately addressed the child's relationship with her half siblings, and its findings are supported by the record.

■ Father also objects to the district court's findings regarding mother's new relationship. The district court found that while the custody evaluator did not believe mother's boyfriend "was the best choice," he is not currently endangering the child. This finding is supported by the record. In her report, the custody evaluator stated that mother will likely move in with her boyfriend in the near future. She reported that mother's boyfriend has received two DUI's, the most recent in 2007, and that in the mid–1990s he was abusive toward his ex-wife and sons and violated a restraining order that restricted him from having contact with them. But the custody evaluator observed that mother's boyfriend is a business owner, he enjoys spending time with mother and her daughters, and mother's daughters enjoy spending time with him. While his background creates grave concerns, his most troubling behaviors took place several years ago and there is nothing in the record that indicates that he has endangered the child. On this record, we cannot say that the district court's finding was clearly erroneous.

### B. The child's adjustment to home, school, and community.

■ Father argues that the district court failed to address "the child's adjustment to home, school, and community." *See* Minn.Stat. § 518.17, subd. 1(a)(6). The district court found that "[t]he child is still at a young enough age as to be resilient and adjust in a healthy way to the separation of her parents and her new current living environment." The district court also found that the child has not displayed any significant adjustment issues with her current schedule of alternating between mother's home and father's home.

These findings are supported by the record. For the first two years of her life, the child lived with both of her parents. During that time, mother was the child's primary caregiver, but in the fall of 2009 the child began attending daycare a few days each week. When mother petitioned for dissolution of marriage, the child was two years old. For approximately the next two months, the child lived primarily with mother. Beginning in June of 2010, the child alternated on a weekly basis between father's farm and mother's home in Iowa. In her report, the custody evaluator stated that the child enjoys spending time with each of her parents and likes both homes. The custody evaluator further observed that the child is doing well in the two different daycares she attends and she has displayed no significant behavior changes.

### C. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

■ Father argues that the district court failed to address "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." *See* Minn.Stat. § 518.17, subd. 1(a)(7). The district court made several findings about the child's living situation from her birth until the present, including that mother was the child's primary caregiver from her birth until February 2010, when father acted as the child's primary caregiver for three

months. The district court noted that since April 2010 mother and father have "shared the caretaking responsibility" for the child and that both parents have provided an adequate home for the child. The district court also found that father's work on his farm "requires a great deal of time and commitment" and that "[d]uring the fall harvest of 2011, [father] failed to hire any person to help with the farming operation as he said he would do." Ultimately, the district court found that "both parents have the capability to provide a permanent, stable, and loving environment for the child."

These findings are supported by the record. As previously discussed, the custody evaluator observed that the child is loved and treated well by both of her parents but that mother was the primary caretaker of the child for most of the child's life. The custody evaluator also observed that mother currently rents a home that is located in a nice neighborhood and she is financially providing for herself and her children. The custody evaluator stated that father owns a large, well-maintained home and farms over 3,000 acres. The custody evaluator noted that father hires help during the harvest, but that "[p]rior to this fall season, [father] stated he would hire someone to cover for him so that he could be available to care for his daughter after 5pm. This did not occur."

Father raises several concerns about mother's stability, arguing that she "presents a picture of utter uncertainty." There is support in the record for father's contentions that mother was unemployed at the time of trial and that, in the past, mother has had nine different part-time jobs and has moved in with her boyfriends, including father, and allowed them to support her. But there is also evidence in the record that supports the district court's finding that mother is able to provide a

stable home for the child. Father has not demonstrated that the district court's findings regarding this factor are clearly erroneous. *See Vangsness*, 607 N.W.2d at 474 (stating "[t]hat the record might support findings other than those made by the [district] court does not show that the court's findings are defective").

### D. The permanence of the existing or proposed custodial home.

Father argues that the district court failed to address "the permanence, as a family unit, of the existing or proposed custodial home." *See* Minn.Stat. § 518.17, subd. 1(a)(8). The district court did not make a finding about the permanence of mother's home, but it found that both parents have adequate homes and can provide "a permanent, stable, and loving environment for the child." These findings are supported by the record.

Father contends that mother's "life is unstable and chaotic" and "transitory." In support of this argument, he points to the fact that mother left two marriages, has had nine part-time jobs, has never been employed full time, has moved four times since January 2010, and has difficulty maintaining relationships. While there is evidence in the record to support some of these contentions, they lack context. Mother left her first marriage after approximately seven years of marriage and she left her second marriage after approximately nine years of marriage. Mother testified that she has held nine part-time jobs and one full-time job throughout her life, but also that she was a full-time caregiver for her four children. Finally, the record establishes that mother lived with father from 1997 until April of 2010. After mother petitioned for dissolution of her marriage to father, he excluded her from the home. As a result, mother stayed temporarily with her boyfriend and her

mother before finding a home to rent. Mother then moved one more time to her current rental home. Father has not demonstrated that the district court's findings regarding this factor are clearly erroneous. *See Vangsness*, 607 N.W.2d at 474.

Accordingly, we conclude that the district court did not abuse its discretion by granting mother sole physical custody of the child.

**II. The district court was not required to address mother's relocation to Iowa under Minn.Stat. § 518.175, subd. 3, in its custody order.**

 Father argues that the district court erred by failing to address mother's relocation to Iowa under Minn.Stat. § 518.175, subd. 3.

 The application of Minn.Stat. § 518.175, subd. 3, was not specifically argued to the district court, and this court generally will not consider matters not argued to and considered by the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). However, this court may review an argument raised on appeal that refines an argument made before the district court if the argument is not "different in kind" and does not center upon "key facts" that were never presented to the district court. *Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 522–23 (Minn.2007). Here, father argued in his motion for amended findings or a new trial that the district court failed to address whether mother's move to Iowa was in the child's best interests. The district court denied father's motion without addressing any of his arguments. Because father's argument on appeal refines the argument he made to the district court and relies on facts already in the record, it is properly before us for review.

In relevant part, Minn.Stat. § 518.175, subd. 3, provides that "[t]he parent with whom the child resides shall not move the residence of the child to another state except upon order of the court or with the consent of the other parent, *if the other parent has been given parenting time by the decree.*" Minn.Stat. § 518.175, subd. 3(a) (emphasis added). The statute further provides that the district court must apply a best-interests standard when considering the custodial parent's request to move the child's residence to another state, and sets forth eight factors for the court to consider. *Id.*, subd. 3(b).

The statute, by its plain language, applies only when the district court has entered the decree and a parent subsequently seeks to move the child to another state. That is not the situation here. When mother moved to Iowa, the decree had not yet been entered, the district court had not determined custody, and the child's permanent residence was yet to be determined. The January 2012 judgment and decree determined the child's residence and the parenting-time schedule. While a temporary order for joint physical custody had been in place since June 2010, the statute that governs temporary orders specifically provides that a temporary order does "not prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings in the proceeding." Minn. Stat. § 518.131, subd. 9(a) (2012).

We further note that the plain language of Minn.Stat. § 518.175, subd. 3(a), indicates that it is intended to address situations when the custodial parent's move is a change of the circumstances that existed when the district court originally made the custody determination. When a parent moves prior to a custody determination and the parent's new residence is addressed in the litigation, the district court has the opportunity to consider the parent's relocation before determining custo-

dy. In this case, although the district court did not specifically address the effect of mother's relocation to Iowa in its findings, consideration of mother's location is implicit in the district court's analysis of the best-interests factors under Minn.Stat. § 518.17. The district court was not required to analyze mother's relocation to Iowa under Minn.Stat. § 518.175, subd. 3(a).

### III. The district court did not abuse its discretion by denying father's motion for a new trial.

Father argues that the district court abused its discretion by denying his motion for a new trial. He contends that the district court's use of the custody evaluator's custody evaluation report requires a new trial because she was biased and her analysis of each best-interests factor did not support her ultimate conclusion. This court generally "defer[s] to the [district] court's broad discretion in deciding whether to grant a new trial." *Vangsness*, 607 N.W.2d at 472.

In contested custody proceedings, a district court may order a professional custody investigation and report. Minn. Stat. § 518.167, subd. 1 (2012). In conducting the investigation, the custody evaluator "may consult any person who may have information about the child and the potential custodial arrangements," including obtaining "information from medical, psychiatric, school personnel, or other expert persons who have served the child in the past." *Id.*, subd. 2(a) (2012). The custody evaluator "must consider and evaluate" the best-interests factors that are set forth in Minn.Stat. § 518.17, subd. 1, and conduct "a detailed analysis of all information considered for each factor." *Id.*, subd. 2(b) (2012). The district court may receive the custody evaluator's report into evidence at the custody hearing. *Id.*, subd. 4

(2012). But the district court is not required to follow a custody evaluator's recommendation if it is outweighed by other evidence. *Pikula*, 374 N.W.2d at 712. This court defers to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988).

Here, the custody evaluation discussed in detail the best-interests factors set forth in Minn.Stat. § 518.17, subd. 1. The custody evaluator considered the strengths and weaknesses of both parents before recommending that mother be granted sole physical custody. The district court received the report into evidence and heard testimony from the custody evaluator at trial. In its custody order, the district court specifically found that the custody evaluator's report and testimony were "credible and not overly biased." In the same finding, the district court stated that it considered the testimony of father's experts—which criticized aspects of the custody evaluator's report—in making its credibility finding. The district court also found that the custody evaluator reviewed numerous records and spoke to 40 individuals about the case, including the individuals with whom mother and father requested that she speak. And the district court discussed the custody evaluator's experience and her recommendations in other cases.

Father contends that because the district court found that the custody evaluator was "not overly biased," then "[o]ne can reach no other conclusion [than] that the [district] court finds [the custody evaluator] 'biased' just 'not overly' so." But that conclusion does not follow from the district court's findings. The district court did not make any finding that indicated it considered the custody evaluator to be biased. And the district court specifically stated that it took into account the testimony of other experts who criticized the

custody evaluator before determining that her report and testimony were credible. It was within the district court's discretion to rely on the custody evaluator's testimony and report, and we defer to the district court's credibility determination. *See Sefkow,* 427 N.W.2d at 210; *In re Paternity of B.J.H.,* 573 N.W.2d 99, 104 (Minn.App. 1998) (applying this deference to expert evidence). Accordingly, we conclude that the district court did not abuse its discretion by denying father's motion for a new trial.

### DECISION

The district court did not abuse its discretion when it granted sole physical custody of the child to mother because it adequately addressed the best-interests factors under Minn.Stat. § 518.17, subd. 1(a), and its findings are not clearly erroneous. In addition, the district court was not required to address whether mother's relocation to Iowa was in the child's best interests under Minn.Stat. § 518.175, subd. 3, because that statute applies only to a parent's relocation postdecree and the district court analyzed similar best-interests factors in making its custody determination. Finally, the district court did not abuse its discretion by denying father's motion for a new trial.

**Affirmed.**