*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0563

In re the Marriage of:
Emily-Jean Chinwendu Aguocha, petitioner,
Respondent,

vs.

Ikechukwu Hisa Aguocha,
Appellant.

**Filed February 29, 2016**
**Affirmed**
**Cleary, Chief Judge**

Hennepin County District Court
File No. 27-FA-13-5103

Sandra Connealy Zick, Minneapolis, Minnesota (for respondent)

Ikechukwu Hisa Aguocha, Plymouth, Minnesota (pro se appellant)

Considered and decided by Cleary, Chief Judge; Chutich, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Ikechukwu Hisa Aguocha challenges a marital-dissolution decree disputing the custody and parenting-time determinations, aspects of the division of property and debts, and the child-support determination. Appellant also contends that the

district judge was generally unfair and biased against him throughout trial. Because the district court did not abuse its discretion or improperly apply the law, we affirm.

**FACTS**

Appellant and respondent Emily-Jean Aguocha were married in February 2003. Their only shared child, D.A., was born in November 2008. The parties' marriage was extremely tumultuous and by all accounts deeply affected by domestic abuse. Respondent testified that appellant began physically abusing her on their wedding night, and that the abuse continued with only brief spells of reprieve during the twelve years of their marriage. Respondent presented medical records verifying some of her testimony as to various injuries resulting from appellant's abuse. To the contrary, appellant denied that he was ever aggressive, and stated that when he hit respondent it was always in self-defense or in defense of D.A. because respondent instigated fights with appellant. There is some sparse evidence of police involvement in these altercations; respondent testified that she was afraid to seek help from law enforcement because she feared appellant would kill her or kidnap D.A.

Throughout the marriage and during trial, appellant accused respondent of abusing D.A. For a period of time before the parties separated, appellant monitored the marital home with secret surveillance cameras. On the basis of one video, appellant contacted child protection services, which conducted an investigation. The child-protection investigation determined that there were no actionable concerns about D.A.'s safety and well-being in respondent's care.

2

The parties separated in June 2013. Respondent petitioned for divorce in Hennepin County district court in July 2013. Based on allegations of domestic abuse, the district court appointed a Guardian ad Litem to represent D.A.'s interests. Because custody and parenting time were in dispute, the district court also ordered a custody and parenting evaluation through Hennepin County Family Court Services. The custody evaluator recommended granting sole legal and sole physical custody to respondent, and the Guardian ad Litem agreed.

Each party was represented by counsel at a court trial which began in July 2014 and concluded in October 2014. The district court granted two extensions of the time for trial to accommodate the parties' lengthy examinations of multiple witnesses. The trial ultimately lasted a total of four days. The parties were unable to resolve any major issues in out-of-court negotiations, so the trial court addressed custody, parenting time, division of property and debts, and child support.

In the decree signed February 3, 2015, the district court awarded sole legal and sole physical custody to respondent, subject to "reasonable parenting time" for appellant. The district court adopted the custody evaluator's recommended parenting-time schedule, which was for D.A. to spend every other weekend with appellant plus four hours every Thursday evening. The court reserved the possibility of an expansion of appellant's parenting time, conditioned upon his successful completion of Domestic Abuse Project (DAP) programming and "if the conflict between the parents has significantly abated." The decree also incorporated a typical shared holiday schedule, which evenly divided major holidays between the parties.

The district court determined, based on the parties' income, that appellant earned 51% of the "parental income available for child support," while respondent earned 49%. Based on the distribution of parenting time and the child-support calculator created by the Minnesota Department of Human Services (DHS) to reflect the statutory child-support guidelines, appellant's monthly obligation was determined to be $650, beginning in the first month after the dissolution action was commenced.

No spousal maintenance was awarded. Appellant was awarded three businesses of unknown value. Appellant was awarded a 2005 Hummer H2 vehicle in exchange for a cash payment to respondent equal to half its book value. Various consumer and tax debts were distributed between the parties. Respondent was made fully responsible for her substantial student debt, despite evidence that the loans benefited both parties during the marriage.

## DECISION

### I. Custody and parenting time

Minnesota law provides factors for evaluating the best interests of a child and guidelines for other determinations as to custody and parenting time.[1] *See* Minn. Stat. § 518.17 (2014) (best-interests factors and custody); Minn. Stat. § 518.175 (2014) (parenting time).

"Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by

---

[1] The relevant sections have been amended twice over the life of this case. We will apply the 2014 versions, which appear to have been used by the district court in the decree.

4

improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). A district court's findings of fact will be sustained unless they are clearly erroneous. *Id.* "A finding is clearly erroneous if this court is left with the definite and firm conviction that a mistake has been made." *Kremer v. Kremer*, 827 N.W.2d 454, 457 (Minn. App. 2013), *review denied* (Minn. Apr. 16, 2013). "We view the record in the light most favorable to the district court's findings and defer to the district court's credibility determinations." *Id.* at 457-58. This court has said that the law "leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness,* 607 N.W.2d 468, 477 (Minn. App. 2000).

The goal of protecting and fostering a child's best interests must shape every decision affecting custody. *Schisel v. Schisel*, 762 N.W.2d 265, 270 (Minn. App. 2009). Our statutes provide that "[t]he best interests of the child means all relevant factors to be considered and evaluated by the [district] court including" an enumerated list of 13 factors. Minn. Stat. § 518.17, subd. 1(a) (quotation marks omitted). Furthermore, if at least one parent seeks *joint* custody, whether legal or physical, and if custody is contested, the district court is required to make "detailed factual findings" on four additional factors. *Id.*, subd. 2(c). Those additional factors are

> (1) the ability of parents to cooperate in the rearing of their children;
> (2) methods for resolving disputes regarding any major decision concerning the life of the child, and the parents' willingness to use those methods;
> (3) whether it would be detrimental to the child if one parent were to have sole authority over the child's upbringing; and

(4) whether domestic abuse, as defined in section 518B.01, has occurred between the parents.

*Id.*, subd. 2(b)(1)-(4). Finally, and of key importance in this appeal, "the court shall use a rebuttable presumption that joint legal or physical custody is not in the best interests of the child if domestic abuse, as defined in section 518B.01, has occurred between the parents." *Id.*, subd. 2(b).

The district court addressed each of the 13 primary best-interests factors in turn. For each factor, the district judge made relevant references to the record, made factual findings supported by those references, and provided an analysis. The observations and analyses were sometimes favorable to appellant, and sometimes favorable to respondent—although they were more often favorable to respondent. The observations and analyses were also at times critical of each party—although they were more often and more severely critical of appellant. In general, the district court expressed concern that appellant was "coercive," "controlling," and the primary perpetrator of physical abuse. The district court made a final conclusion on each factor as to whether the factor favored a particular custody outcome or whether it was neutral. Ultimately, the decree concluded that seven factors weighed in favor of sole custody to respondent and six factors were neutral.

The district court also made detailed factual findings on the four additional factors, which was required since appellant sought joint legal and joint physical custody while respondent sought sole legal and sole physical custody. *Id.*, subd. 2(c); *id.*, subd. 2(b)(1)-(4). On each of these factors, the district court again made relevant references to the

record, made factual findings supported by those references, and provided an analysis. The district court identified "high conflict," overwhelming inability of the parties to cooperate, history of domestic abuse, and the parties' inability "to see how destructive and damaging their conflict is to [D.A.'s] healthy development and ultimate adjustment as an effective and functioning human being." As to the fourth factor, the decree specifically found: "As established by the record, domestic abuse has occurred between the parents."

Because the statute establishes a presumption against joint custody when domestic abuse has occurred, because the district court's factual findings are supported by the record, and because the decree clearly considers all 17 best-interests factors that were required in this case, we affirm the district court's custody determination.

A "district court has broad discretion in determining parenting-time issues and will not be reversed absent an abuse of that discretion." *Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009). The findings of fact underlying a parenting-time decision should be upheld unless clearly erroneous. *Id.* Considering the district court's findings about high conflict between the parties and its detrimental effect on D.A., and considering D.A.'s young age, the district court's decision as to parenting time was an appropriate exercise of discretion. We affirm the district court's parenting-time determination.

Appellant argues that the district court abused its discretion by referencing and incorporating portions of the custody evaluator's report, and contends that the evaluator's report and testimony are inconsistent and therefore untrustworthy. But our family court system relies on district courts for credibility determinations. *Kremer*, 827 N.W.2d at

7

457-58. Appellant asserts no authority to show that any reference to the recommendation of a custody evaluator—even total incorporation—would be improper. The district court's references to the custody evaluator's report and testimony are appropriate.

Appellant also argues that his version of the facts is not fairly represented in the decree. But it is appropriate for the district court to make factual findings based on credibility determinations. *Kremer*, 827 N.W.2d at 457-58. "If there is evidence to support the district court's decision, there is no abuse of discretion. . . . [T]hat the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Id.* at 458 (quotation omitted).

Appellant also argues that DAP programming was unfairly imposed on him as a contingent factor related to increased parenting time. Appellant cites, and our research revealed, no authority showing that the district court's decision in this regard was inappropriate. *See Suleski v. Rupe*, 855 N.W.2d 330, 339 (Minn. App. 2014) (stating that a party waived an argument by failing to cite authority supporting the argument). The decree actually imposed a DAP requirement on both parties, although the requirement on respondent is not a contingent factor for parenting time—which is logical because she is the sole physical custodian. The record does not clearly show whether either party had satisfied that requirement by the end of the trial and, in any event, whether either party had satisfied the DAP requirement by the end of trial is irrelevant on appeal.

II.     **Division of property and debts**

Appellant argues that the district court erred in determining that the parties' two vehicles were marital property. As to the 2005 Hummer H2, appellant argues that its

8

value should not have been considered a marital asset because it was not registered in his name. As to the 2005 Nissan Altima, he argues that it was not marital property because it was a business asset.

Any property acquired by one or both spouses during a marriage is presumed to be marital property. Minn. Stat. § 518.003, subd. 3b (2014); *Berenberg v. Berenberg*, 474 N.W.2d 843, 846 (Minn. App. 1991), *review denied* (Minn. Nov. 13, 1991). Appellate courts "independently review the issue of whether property is marital or nonmarital, giving deference to the district court's findings of fact." *Baker v. Baker,* 753 N.W.2d 644, 649 (Minn. 2008). And again, this court will only overturn a finding of fact if it is clearly erroneous. *Lund v. Lund,* 615 N.W.2d 860, 861 (Minn. App. 2000).

Appellant's arguments are unavailing. The vehicles were acquired by the parties during the marriage and do not meet any exception to the presumption that property acquired during the marriage was marital property. *See* Minn. Stat. § 518.003, subd. 3b (explaining the presumption of marital property and enumerated exceptions). We affirm the district court's property and debt division.

### III. Child support

Appellant challenges the district court's child-support ruling, contending that the income attributed to him is inaccurate.

"'To determine the presumptive child support obligation of a parent, the [district] court shall . . . determine the gross income of each parent. . . .'" *Newstrand v. Arend*, 869 N.W.2d 681, 685 (Minn. App. 2015) (quoting Minn. Stat. § 518A.34(a), (b)(1) (2014)), *review denied* (Minn. Dec. 15, 2015). Gross income is broadly construed to include "any

form of periodic payment" to an individual obligated to pay child support. Minn. Stat. § 518A.29 (2014). Deductions and expenses related to self-employment or operation of a business are narrowly construed, and "the person seeking to deduct an expense" carries the burden of proof in showing that the expense is qualified to be deducted. Minn. Stat. § 518A.30 (2014); *see also* Minn. Stat. § 518A.29(c) (explaining that "[e]xpense reimbursements or in-kind payments" from self-employment "shall be counted as income if they reduce personal living expenses"). The district court used the DHS child-support calculator, which reflects the guidelines laid out by Minn. Stat. §§ 518A.35, .36 (2014), and did not deviate from the result produced by the calculator. The district court also made written findings as required by Minn. Stat. § 518A.37 (2014).

Appellant testified at trial and also submitted a financial affidavit stating that his average monthly income was about $4,000.00, which is the amount that the district court used in calculating child support. Appellant presented no evidence of itemized business deductions or other reasons to modify the income attributed to him. We affirm the district court's child-support ruling.

IV. **Judicial misconduct or bias**

We examine the district court's factual findings and legal determinations according to the proper standards of review, but it is not our role to address parties' allegations of personal bias by the district judge. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (holding that appellate review is limited to those issues that were presented to and considered by the district court). While this was a difficult trial, the

10

district court properly applied the law and exercised discretion appropriately on the various legal issues.

**Affirmed.**