In re the Marriage of Jane Liu JONES,
Petitioner, Respondent,

v.

Charles Steve JONES, Appellant.

No. C5–86–1268.

Court of Appeals of Minnesota.

March 10, 1987.

A.M. Keith, Dunlap, Keith, Finseth, Berndt & Sandberg, P.A., Rochester, for respondent.

Judith L. Oakes, Oakes & Kanatz, St. Paul, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

Charles Steve Jones appeals this dissolution judgment and denial of his motion for a new trial. He contends the trial court lacked subject matter jurisdiction and abused its discretion in apportioning the parties' debts and by refusing to grant him a continuance. We affirm.

## FACTS

Respondent Jane Liu Jones, a citizen of the People's Republic of China, came to the United States on April 17, 1985, to study at the Mayo Clinic as part of a foreign exchange program. Her J–1 nonimmigrant exchange visitor visa authorized her to participate in the program for one year, from June 1, 1985 to May 31, 1986.

On May 31, 1985, Jane arrived in Rochester, Minnesota, where she rented an apartment and began her appointment as a visiting clinician at Rochester Methodist Hospital. She receives no compensation for her work; her only source of income is $500 per month provided by an uncle in New York City.

Steve is a resident of Springfield, Missouri. He describes himself as a very successful professional salesman, who earned $50,000 per year working for 3M until he quit on August 5, 1985.

The parties met July 12, 1985, in Rochester. Over the next few months they usually saw each other on weekends, either in Rochester, Springfield or Kansas City.

The parties were married in Springfield November 1, 1985. That night they had a fight because Steve felt she had misled him about being a virgin. According to Jane, Steve slapped her, choked her, spit in her face and spilled wine on her head. Jane testified that for the next six days he kept her a virtual prisoner, until her aunt and uncle in New York sought police intervention, and Jane was permitted to leave.

After Jane returned to Rochester, there were a few attempts at reconciliation which failed. On November 12, Jane told him she wanted a divorce. She testified Steve told her she could have a divorce one of two ways: the easy way was to give him $200,-000 or let him beat her for two hours without her telling the police; the hard way was that he would destroy her every way he could. He testified he was so mad he did not know what he said.

Jane started this dissolution proceeding December 18, 1985. She filed a certificate of readiness January 16, 1986. Steve filed a certificate of nonreadiness January 27, alleging that discovery was not completed and there was insufficient time to prepare for trial. Steve filed a second certificate of

nonreadiness on April 22. At the pre-trial conference on May 6, the court denied Steve's application for a continuance of the trial date.

Prior to trial, Steve moved to dismiss for lack of subject matter jurisdiction on the ground that neither he nor Jane had been a resident or domiciliary of Minnesota for the 180 days required by statute to bring a dissolution proceeding. The motion was denied. The trial was held May 14, 1986.

The trial court found that Jane had been a continuous resident of Minnesota since May 31, 1985, and granted her a dissolution. The court also ruled that the parties were solely responsible for debts incurred in their own names.

### ISSUES

1. Did the trial court have subject matter jurisdiction to grant respondent a dissolution?

2. Did the trial court abuse its discretion in not apportioning to respondent certain debts incurred by appellant?

3. Did the trial court abuse its discretion in denying appellant's motion for a continuance?

### ANALYSIS

1. *Subject matter jurisdiction.*

Minn.Stat. § 518.07 (1984) provides:

*Residence of parties*

No dissolution shall be granted unless (1) one of the parties has resided in this state * * * for not less than 180 days immediately preceding the commencement of the proceeding; or (2) one of the parties has been a domiciliary of this state for not less than 180 days immediately preceding commencement of the proceeding.

■ This requirement is jurisdictional, and a dissolution granted in violation of it is void. *Wyman v. Wyman,* 297 Minn. 465, 467, 212 N.W.2d 368, 369 (1973). A finding that the residence requirement has been satisfied will be reversed only if it is "palpably contrary to the evidence." *See Da-*

*vidner v. Davidner,* 304 Minn. 491, 493, 232 N.W.2d 5, 7 (1975).

The trial court found that Jane established residence in Rochester on May 31, 1985, and had been a continuous resident of Minnesota for more than 180 days immediately preceding commencement of this proceeding.

Minn.Stat. § 518.003, subd. 2 (1984) defines residence as follows:

"Residence" means the place where a party has established a permanent home from which the party has no present intention of moving.

The trial court found:

Despite her marriage, Jane's trips to Springfield did not effect a change of her residence. *During all times relevant to these proceedings, Jane intended to return to Rochester and complete her program as a visiting clinician.* * * * Jane never actually moved her primary home from Rochester. She never gave notice that she intended to quit her job or move out of her Rochester apartment. She never moved her possessions to Springfield. Thus Jane never acquired a new residence but, although temporarily absent, remained a resident of Minnesota.

(Emphasis added.) These findings are not "palpably contrary" to the evidence.

■ The statute's definition of residence as a "permanent" home is more problematic, since Jane was here on a nonimmigrant visa and the trial court found that "it is not clear whether she intended to return to China or remain permanently in the United States." However, the purpose of the residency requirement is to

prevent nonresidents from coming into our courts with their grievances, and to compel them to resort for relief from matrimonial entanglements to the courts of the place of their abode.

*Davis v. Davis,* 297 Minn. 187, 195, 210 N.W.2d 221, 227 (1973) (quoting *Bechtel v. Bechtel,* 101 Minn. 511, 514, 112 N.W. 883, 884 (1907)). Since forum-shopping is not a concern here, the fact that Jane might have

intended to return to China should not preclude her Minnesota home from being considered her residence under the statute.

■ Steve's argument that Jane had to be "physically present" in Minnesota for the entire 180–day period is contrary to the statutory definition of residence, the purpose of the residency requirement, and reason.

Steve also argues that Jane's Minnesota residency terminated upon her marriage. He cites *Gussman v. Rodgers*, 190 Minn. 153, 251 N.W. 18 (1933), in which the court noted the general rule that the husband, "as head of the family," has the right to determine its domicile and thus his domicile is the wife's as well. *Id.* at 157, 251 N.W. at 19. The rule cited in *Gussman* refers to domicile, however, not residence; Minn. Stat. § 518.07 does not use those terms as synonyms, since it provides for jurisdiction based either on residence or domicile.

■ Also, that rule is usually applied in determining the parties' homestead. *See, e.g., Gussman.* It does not apply in all contexts. *See, e.g., Tureson v. Tureson*, 281 Minn. 107, 111, 160 N.W.2d 552, 556 (1968) ("where a married woman acquires a domicile separate from her husband and takes the children with her to her domicile, the domicile of the mother determines the domicile of the children"). Since Minn.Stat. § 518.07 provides that jurisdiction can be based on the domicile or residence of either the husband or the wife, it implies that in this context a wife's domicile or residence can differ from her husband's.

### 2. *Apportionment of debts.*

The trial court ruled that each party be responsible for all indebtedness incurred by that party. Steve introduced evidence that he incurred $51,556.29 in debts between August 1, 1985, and March, 1986, including over $32,000 in personal loans, $2000 for gifts, $2300 for lodging, and $1200 for car rentals. Steve contends that these debts "are attributable to their relationship" and that Jane should therefore be responsible for half.

■ A trial court has broad discretion in the apportionment of debts in a dissolution proceeding and will be reversed only upon a clear showing of an abuse of that discretion. *See Plaster v. Plaster*, 373 N.W.2d 604, 606–07 (Minn.Ct.App.1985). The trial court is guided by equitable considerations in making its determination. *Id.*

■ In its order denying Steve's post-trial motion, the court concluded:

The court's apportionment of debt effects an imminently fair and equitable distribution of the courtship and marriage expenses * * *.

We agree.

The parties were married for a very short time, and never really lived together as husband and wife. Steve's debts cover an eight-month period, including three months prior to marriage and three months after Jane sued for dissolution. They include items having no ostensible relation to Jane, such as over $32,000 in personal loans. Steve voluntarily incurred these exorbitant debts, and he has shown no valid reason why Jane should be forced to pay for half. *See Dahlberg v. Dahlberg*, 358 N.W.2d 76, 80 (Minn.Ct.App.1984) (upholding apportionment of entire marital debt to husband who had incurred most of them without consulting wife).

We reject Steve's argument that Jane should be apportioned half of his debts because she has the greater earning ability. Although Steve has not had full-time employment since he resigned from 3M in August, 1985, he testified that he is a successful professional salesman and that he had turned down an offer for a $100,000 per year job in November, 1985. Jane is a nonimmigrant alien who is not licensed to practice medicine in this country, and she subsists only on the money her uncle sends her.

### 3. *Denial of continuance.*

■ The granting of a continuance is within the discretion of the trial court,

and its ruling will not be reversed absent a showing of a clear abuse of discretion. *Dunshee v. Douglas*, 255 N.W.2d 42, 45 (Minn.1977). The test is whether a denial prejudices the outcome of the trial. *Weise v. Commissioner of Public Safety*, 370 N.W.2d 676, 678 (Minn.Ct.App.1985).

Steve contends that his accountant did not have time to prepare for trial as a result of the denial. The failure of the accountant to testify had no effect on the outcome of the trial. Steve testified the accountant would have authenticated records of his debts. The authenticity of the debts, however, was neither disputed nor relevant to the trial court's decision to make each party liable for his or her own debts.

## DECISION

Affirmed.