*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0156**

In re the Marriage of: Tarah Ann Aanerud, petitioner,
Appellant,

vs.

James Richard Aanerud,
Respondent.

**Filed November 23, 2015**
**Affirmed**
**Hooten, Judge**

Grant County District Court
File No. 26-FA-13-78

John R. "Rob" Hill, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, Minnesota (for appellant)

Katrina I. Wass, Pemberton, Sorlie, Rufer & Kershner, P.L.L.P., Fergus Falls, Minnesota (for respondent)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Worke, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

In this marital dissolution proceeding, appellant wife argues that the district court abused its discretion by dividing the parties' marital property inequitably, awarding her

inadequate child support and spousal maintenance, and denying her request for attorney fees. We affirm.

**FACTS**

Appellant Tarah Ann Aanerud and respondent James Richard Aanerud were married on December 15, 1995, and had four children during their marriage. Throughout their marriage, appellant and respondent operated a farm. In April 2013, appellant petitioned for dissolution of the marriage. The parties stipulated to custody of the children and a parenting-time schedule. The parties also stipulated to the appointment of a consensual special magistrate to resolve the remaining issues in a bifurcated trial.

The first part of the bifurcated trial, addressing the division of marital property and some marital debts, was held on March 5, 2014. In the first partial order, the magistrate divided the marital property equally between the parties, but awarded most of the parties' farmland and farm equipment to respondent. The district court adopted the magistrate's decision and entered judgment on April 21, 2014. Appellant filed a motion for amended findings of fact and conclusions of law and/or a new trial. The magistrate denied the motion for a new trial, but granted some of appellant's requests for amended findings and conclusions of law. The district court adopted this order.

The second part of the bifurcated trial, addressing child support, spousal maintenance, other marital debts, and attorney fees, was held on June 20, 2014. In the second partial order, the magistrate awarded appellant child support and spousal maintenance and split a marital joint credit card debt between the parties, but denied appellant's request for attorney fees. The district court adopted the magistrate's decision

2

and entered judgment on September 22, 2014. Appellant again moved for amended findings of fact and conclusions of law and/or a new trial with regard to the second partial judgment and decree. The magistrate denied appellant's motion for a new trial, but granted some of appellant's requests for amended findings of fact and conclusions of law. The district court adopted this order. This appeal followed.

## D E C I S I O N

### I.

Appellant challenges the district court's division of the marital property and marital debt.[1] Although the first judgment and decree provides that the parties' marital property was equally divided, appellant argues that the award unfairly distributes a disproportionate share of the farmland and farm equipment to respondent. Appellant also claims that the district court erred in awarding all of the parties' farm rental contracts to respondent and in requiring that appellant pay one-half of the parties' credit card debt.

Upon dissolution, "the court shall make a just and equitable division of the marital property of the parties." Minn. Stat. § 518.58, subd. 1 (2014). The statute lists a number of factors that the district court must consider in dividing marital property, including the age, health, employability, needs, occupation, and income of each party. *Id.* Additionally, the district court must "consider the contribution of each [party] in the

---

[1] While the magistrate made the amended findings and conclusions of law, these amended findings and conclusions of law were adopted by the district court in its judgments and decrees and its orders addressing appellant's motions to amend. Accordingly, since our review is of these two partial judgments and decrees and the two orders as adopted by the district court, we will refer to the amended findings and conclusions of law as those of the district court.

acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property." *Id.* In property division, the district court must consider the relevant statutory factors and describe its rationale in order to allow for meaningful appellate review. *Dick v. Dick*, 438 N.W.2d 435, 437 (Minn. App. 1989).

A district court has broad discretion in dividing property in a marital dissolution case. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). This court gives deference to the district court's findings of fact and will not set them aside unless they are clearly erroneous. *Id.* A district court's resolution of a question must be "against logic and the facts on record before [an appellate] court will find that the trial court abused its discretion." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). The district court's valuation of an asset is a finding of fact and will "not be set aside unless clearly erroneous on the record as a whole." *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn. 2001) (quotation omitted).

In dividing marital debts, the court follows the same principles as it does when dividing marital property. *Dahlberg v. Dahlberg*, 358 N.W.2d 76, 80 (Minn. App. 1984). "A trial court has broad discretion in the apportionment of debts in a dissolution proceeding and will be reversed only upon a clear showing of an abuse of that discretion." *Jones v. Jones*, 402 N.W.2d 146, 149 (Minn. App. 1987). The district court may apportion debt on the basis of who incurred the debt. *See Filkins v. Filkins*, 347 N.W.2d 526, 528–29 (Minn. App. 1984) (affirming the apportionment of $32,000 of debt to husband and $4,000 of debt to wife where most of the debts were entered into by husband for his own purposes).

4

**Farmland and Equipment**

Appellant argues that the district court abused its discretion by awarding a disproportionate share of farmland and farm equipment to respondent, notwithstanding appellant's stated desire to also continue farming after the dissolution. At trial, appellant testified that she grew up on a farm and had worked on the farm throughout her marriage. Appellant explained that, even though she was the primary caretaker of the parties' four minor children during the marriage, she did the bookkeeping for the farm. Upon further questioning, appellant testified that she had also participated in the management of the farm, had worked in the fields, and had done "anything that had to be done" on the farm, including "helping dig a field or help[ing] bring the seed to plant the field."

Respondent testified that he also grew up on a farm. In the early 1980s, he started farming on his own after buying some land from his uncle. Respondent testified that he expanded his farming operation by purchasing a few parcels of land before marrying appellant in 1995. During the marriage, he farmed over 3,000 acres. Respondent testified that appellant was more involved with caring for their children than he was and that, while appellant would help as needed in operating the farm, he "put in way more hours" of farm labor than appellant.

An equal division of the wealth earned through the efforts of both parties is appropriate on dissolution of a long-term marriage. *Miller v. Miller*, 352 N.W.2d 738, 742 (Minn. 1984). Here, the district court awarded the parties, who had been married for

5

over 18 years, equal shares of the marital property, down to the penny.[2]  In the property distribution, appellant received real property worth $2,428,100 while respondent received encumbered property with a net value of $2,682,987.08.  Of the marital farmland and farm equipment that was awarded, appellant received approximately 220 acres, which were unencumbered, while respondent received approximately 587 acres and most of the farm equipment, which were heavily encumbered.  As a result of this distribution, respondent was responsible for substantially more debt than appellant, including mortgages totaling $1,367,312.92 on the real property he was awarded and loans totaling $1,190,526.98 on the farm equipment he was awarded.

Appellant argues that the district court abused its discretion in awarding most of the farmland and farm equipment to respondent without any "finding or rationale or explanation as to why [it] divided the real property the way [it] did."  Appellant cites *Wallin v. Wallin*, 290 Minn. 261, 267, 187 N.W.2d 627, 631 (1971), a child custody case, for the proposition that when a district court has broad discretion, the district court's decision must "be set forth with a high degree of particularity if appellate review is to be meaningful."   But, detailed findings of fact are not required in property division cases. *Vinnes v. Vinnes*, 384 N.W.2d 589, 592 (Minn. App. 1986).  The findings must indicate, however, the district court's rationale in reaching its property award.  *Dick*, 438 N.W.2d at 437.  The findings must be sufficient for an appellate court to determine whether the district court took the relevant factors into consideration when making the property

---

[2] Appellant and respondent each received marital property with a net value of $3,060,923.13.

6

division decision. *Vinnes*, 384 N.W.2d at 592; *see also* Minn. Stat. § 518.58, subd. 1 (providing a list of relevant factors).

Here, while the district court made minimal findings regarding the reasoning behind its property division decision, the findings are sufficient to permit our review. The district court made findings as to the length of the marriage and the age of the parties, and noted the conflicting testimony regarding the involvement of each party in the farming operation. Furthermore, the district court divided the marital property between the parties equally, recognizing the contribution of both parties throughout the marriage. Because there was substantial evidence in the record that respondent's full-time occupation during the marriage was farming and that appellant had to divide her duties between the home and the farm, the district court did not abuse its discretion in awarding the bulk of the farmland and farm equipment, along with their encumbrances, to respondent.

**Farm Rental Contracts**

The district court found that the parties had spent "a considerable amount of time and effort throughout their marriage" in establishing and maintaining relationships with other individuals and corporations so that the parties could enter into rental contracts for the use of additional land for farming. Respondent testified that while approximately two-thirds of the parties' farming was done with rented or sharecropped land, he believed that the farm rental contracts had "some value" but that they did not have an ascertainable value for the purposes of the marital property division. Respondent noted that some of the contracts had already expired in 2014, none of the written contracts extended beyond

7

2015, and two of the contracts were oral contracts of uncertain duration. Therefore, respondent argued that it would be impossible to put a dollar value on them. Appellant disagreed, claiming that she was willing to pay respondent $800,000 in structured payments for the exclusive right to enter into future contracts with the current landlords. The district court assigned the contracts to respondent. On appeal, appellant argues that the district court abused its discretion in assigning all of the contracts to respondent and erred by not attributing any value to the contracts. In the alternative, appellant argues that the district court erred in not dividing the farm rental contracts equally so as to avoid any valuation issues.

Here, the district court was faced with conflicting testimony regarding the value of contracts for the rental of farmland that were expiring, almost expired, or oral contracts of uncertain duration. The district court found appellant's argument that the contracts were to be valued at $800,000 to be without merit. By assigning the contracts to respondent and rejecting appellant's arguments that the rental contracts had significant value, the district court accepted respondent's testimony that any valuation of the contracts would be speculative. Based upon this record and the conflicting testimony of the parties, the district court's implicit finding that there was insubstantial evidence of valuation is not clearly erroneous. The district court did not abuse its discretion by awarding the contracts to respondent.

**Credit Card Debt**

Appellant also contends that the district court erred by equally apportioning the credit card debt between the parties. The district court found that the parties used the

joint credit card to buy personal items and appellant "testified that she had purchased gift cards with the credit card and used the credit card to pay various household living expenses." Appellant claims that she was forced to pay her household expenses by credit card because, after January 2014, she did not receive any child support or other financial support from respondent for herself or the children until child support was awarded, commencing August 1, 2014, in the second partial judgment and decree. She also alleged at trial that some of the credit card debt was for respondent's expenses associated with the farm operation. For these reasons, she argues that the district court should have assigned all of the credit card debt to respondent or, alternatively, backdated her child support to February 1, 2014.

The parties agreed in a stipulated temporary order filed on June 14, 2013, that "in lieu of temporary child support," they would "continue to utilize and have access to the joint accounts for reasonable expenditures for the minor children and themselves." The order further provided that in the event that expenditures became unreasonable, "either party may move the [c]ourt for child support." There is no record of any motion for child support by either party, and it was only during appellant's testimony at trial that she requested that child support be made retroactive to February 2014. Respondent requested that child support commence upon the district court's initial award of child support.

Based upon the parties' stipulated temporary order and the failure of either party to bring a motion for child support prior to trial, the district court did not err in its refusal to retroactively award child support to appellant. *See Davis v. Davis*, 631 N.W.2d 822, 827 (Minn. App. 2001) ("Generally, where no prior order to pay child support exists, it is

improper to give a support order retroactive effect."). And, because there was substantial evidence in the record that both parties utilized the credit card for payment of expenses, the district court's decision to split the credit card debt equally between the parties was not an abuse of discretion.

## II.

Appellant challenges the district court's spousal maintenance award. In a dissolution action, the district court may award spousal maintenance to a spouse who, "considering the standard of living established during the marriage," "lacks sufficient property . . . to provide for [his or her] reasonable needs" or "is unable to provide adequate self-support . . . through appropriate employment." Minn. Stat. § 518.552, subd. 1 (2014). In determining the amount and duration of spousal maintenance, the district court must consider a list of factors in order to determine a fair award. *Id.*, subd. 2. Relevant factors in this determination include: (1) the financial resources of the party seeking maintenance, including marital property apportioned to the spouse and the party's ability to meet needs independently; (2) the time necessary for the spouse seeking maintenance to become self-supporting; (3) the parties' standard of living during the marriage; (4) the duration of the marriage and a homemaker's length of absence from employment; (5) the employment opportunities and benefits foregone by the spouse seeking maintenance; (6) the age and physical and emotional health of the spouse seeking maintenance; (7) the ability of the spouse from whom maintenance is sought to meet his or her needs while meeting the needs of the spouse seeking maintenance; and (8) the

contribution of both parties to the marital property and the contribution of a homemaker spouse in furtherance of the other spouse's employment or business. *Id.*

This court applies an abuse of discretion standard of review to a district court's determination of the amount and duration of a spousal maintenance award. *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009). A district court abuses its discretion when it makes unsupported findings or incorrectly applies the law. *Hemmingsen v. Hemmingsen*, 767 N.W.2d 711, 716 (Minn. App. 2009), *review granted* (Minn. Sept. 29, 2009) *and appeal dismissed* (Minn. Feb. 1, 2010). "Findings of fact concerning spousal maintenance must be upheld unless they are clearly erroneous." *Gessner v. Gessner*, 487 N.W.2d 921, 923 (Minn. App. 1992). This court views the record in the light most favorable to the district court's findings and defers to its credibility determinations. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000).

**Respondent's Income**

Appellant contends that the district court erred in adopting the opinion of respondent's expert as to respondent's farm income after the property division without providing any explanation or reasoning. Appellant also contends that the district court failed to make adequate findings as to the income received by respondent for cooperative distributions. Although appellant contests the adequacy of the district court's findings and points out that her expert testified that respondent had $38,420 "available for support each month," she makes no argument that the district court's finding regarding respondent's farm income is clearly erroneous.

11

There is no merit to appellant's argument that the district court provided no explanation or reasoning for its finding that respondent's gross farm income was $17,845.17 per month. As set forth in the second partial judgment and decree, the district court adopted the position of respondent's expert who, using the parties' tax returns, determined that the parties' five-year average annual self-employment income from farming was $244,154 ($20,346.17 per month). The district court reasoned that when this amount was adjusted for the reduction in acres that respondent would have after the dissolution, his anticipated gross annual income would be $214,142 ($17,845.17 per month). Contrary to the contentions of appellant, the district court, in adopting the calculations of respondent's expert in determining respondent's farm income, explained how respondent's gross farm income was calculated and that it was based upon the parties' tax returns.

Appellant argues that the district court, in reducing respondent's income to reflect the fact that his cooperative distribution income was double-counted, failed to indicate what amount was double-counted. The district court found that respondent received cooperative distributions in the amount of $2,083 per month. While this amount was initially treated as a separate additional source of income, the parties agreed that this amount was already included in the total farm income as reported on their tax returns. So as to avoid a double counting of this income, the second partial judgment and decree was amended to delete the cooperative distributions as an additional source of respondent's income. In order to correct this double-counting error, it was not necessary for the

12

district court to set forth the amount that was double-counted since the district court had already determined the amount of the cooperative distributions to be $2,083 per month.

Finally, appellant argues that the district court erred in its calculation of respondent's income by failing to include the payments that respondent will receive from the United States Department of Agriculture (USDA). Appellant's expert testified that respondent would receive four more annual payments of $40,000 from the program, which had a five-year limit. Respondent testified that he had received two $40,000 payments from the USDA and that he was uncertain whether he would receive any more payments because "it's kind of if [the USDA] [has] the money they'll do it. It's always kind of an iffy thing." This court defers to the credibility determinations of the district court. Minn. R. Civ. P. 52.01. Because there was conflicting testimony regarding respondent's anticipated receipt of these USDA payments, and there was substantial evidence in the record that respondent's receipt of such payments was speculative, the district court did not err in excluding the USDA payments from respondent's income.

**Appellant's Income**

Appellant argues that the district court erred in calculating her income. First, appellant contends that the district court erred because it did not explain how it determined her farm income. In its second judgment and decree, the district court stated that "[s]ince it is uncertain whether [appellant] will plant corn, soybeans, or simply rent out the land, rental income will be utilized when calculating her income for support purposes." The district court adopted the opinion of appellant's expert regarding the rental value of the real property, finding as credible the expert's opinion that renting out

13

the farmland to other farmers would yield the highest income to appellant. Because the district court explained that it determined appellant's farm income using the income appellant would receive if she rented out her farmland, the district court did not err.

Next, appellant argues that the district court erred in imputing non-farming income to her of $1,880 per month, claiming that this imputation of income to her "create[d] a scenario where the court, in effect, expected [appellant] to work *two* full-time jobs . . . while simultaneously serving as the primary caregiver for the parties' four children." We find no merit to this assertion. For purposes of determining potential income, "it is rebuttably presumed that a parent can be gainfully employed on a full-time basis." Minn. Stat. § 518A.32, subd. 1 (2014). The district court found that because appellant could earn an income by renting her farmland to other farmers, she would not be engaged in the farming operation, but would be available for full-time employment. Based on this record, the district court did not abuse its discretion by concluding that appellant had failed to rebut the presumption that she could be gainfully employed full-time and by imputing income to appellant.

Appellant also argues that the district court erred in determining the income that appellant would earn through her ownership of a campground. Specifically, appellant alleges that the district court improperly determined the income of the campground using a net operating income estimate contained in a 2013 appraisal that the parties received during the marriage when they attempted to obtain a loan. Appellant asserts that the district court should have relied upon a financial statement prepared by appellant's expert rather than the appraisal. Given the conflicting evidence on this issue, the district court

14

did not err in calculating the campground income attributable to appellant based upon an independent appraisal received by the parties.

**Spousal Maintenance Amount**

Appellant argues that the district court erred in making no findings as to the parties' monthly expenses. Appellant contends that without findings as to the monthly expenses of the parties, the determination of the amount of maintenance support is not supported by the evidence. In determining spousal maintenance, the district court must take into account the expenses of the parties. Minn. Stat. § 518.552, subd. 2(c) (listing "the standard of living established during the marriage" as one of the factors taken into account in determining spousal maintenance). Without findings as to the expenses of the parties, an appellate court is unable to evaluate a maintenance award. *Cummings v. Cummings*, 376 N.W.2d 726, 731 (Minn. App. 1985). However, this court "may treat statutory factors as addressed when they are implicit in the findings." *Prahl v. Prahl*, 627 N.W.2d 698, 703 (Minn. App. 2001). The district court "is not required to make specific findings on every statutory factor if the findings that were made reflect that the district court adequately considered the relevant statutory factors." *Peterka v. Peterka*, 675 N.W.2d 353, 360 (Minn. App. 2004).

Here, the district court determined that appellant's claimed estimated monthly living expenses of $14,592 were inflated. Specifically, the district court deducted as unreasonable a monthly expense of $1,500 for attorney fees; $192 for credit card monthly payments; the full cost of obtaining health insurance for the parties' children which was held to be respondent's obligation; and her claimed inflated expense for her proportionate

15

share of the children's unreimbursed medical expenses. With these specific deductions delineated as unreasonable expenses, appellant's reasonable monthly living expenses would be approximately $12,000. The district court determined that appellant had a gross monthly income of $10,922, which included her receipt of monthly spousal maintenance of $3,500 and her anticipated income from her farm rental, windfarm, campground, and employment of $7,422. With the payment of respondent's monthly child support obligation of $1,879, appellant would receive an amount in excess of her reasonable monthly living expenses.

Appellant is correct that the district court failed to make a specific finding regarding respondent's monthly living expenses. But, the district court made findings as to his financial resources and his substantial debt load. The district court accepted the testimony of respondent's expert and found that respondent's monthly gross income for support purposes was $25,070.[3] Under the parties' partial judgments and decrees, appellant is not responsible for any marital debt other than half of the credit card debt, while respondent is responsible for mortgages and loans of approximately $2.56 million, which, according to respondent's expert, would have to be paid from respondent's farm income. Despite the lack of explicit findings regarding respondent's expenses, the district court, in its consideration of the statutory factors, did not abuse its discretion in

---

[3] The district court erroneously used the parties' gross income instead of their net income in calculating spousal maintenance. *See Kostelnik v. Kostelnik*, 367 N.W.2d 665, 670 (Minn. App. 1985) (holding that in determining a party's ability to pay spousal maintenance "the court must make a determination of the payor spouse's net or take-home pay"), *review denied* (Minn. July 26, 1985). However, as neither party has raised this issue, we will not address it. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (holding that issues not briefed on appeal are waived.)

awarding spousal maintenance of $3,500 per month to appellant, which amount, when added to her income and child support, will cover her reasonable living expenses.

**Spousal Maintenance Duration**

Appellant argues that the district court erred in ordering temporary spousal maintenance with no explanation as to the duration of the maintenance. The absence of findings on the statutory factors, appellant argues, prohibits effective appellate review. This court applies an abuse of discretion standard to the duration of a spousal maintenance award. *Maiers*, 775 N.W.2d at 668. "The maintenance order shall be . . . for periods of time, either temporary or permanent, as the court deems just. . . ." Minn. Stat. § 518.552, subd. 2. "Where there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification." *Id.*, subd. 3.

The district court ordered that respondent pay appellant $3,500 per month for ten years as spousal maintenance. Despite appellant's contention that "[t]he trial court made not a single finding as to *why* the court selected a ten-year period," the district court explicitly or implicitly addressed the factors listed in the statute. The district court found that appellant was awarded significant real and personal property in the dissolution and that both parties made substantial contributions to the marital estate. In addition, the district court found that the parties were married for 18.5 years, respondent was 52 years old at the time of the dissolution, and the parties' youngest child was 9 years old at the time of the dissolution. As is evident from these findings, respondent is obligated to pay spousal maintenance until he is 61 years old, which is at or near retirement age, and when

17

the parties' youngest child turns 18 years old. The findings also indicate that appellant, who was 37 years old at the time of the dissolution, is fifteen years younger than respondent, has marketable skills and is employable, presumably for a longer period than ten years. In addition, the district court found that appellant will be able to earn a substantial income from her farmland, campground, and windfarm. Based upon this record, the district court did not abuse its discretion in awarding spousal maintenance for a duration of ten years.

**III.**

Appellant challenges the district court's child support award. District courts have broad discretion in determining child support. *Marden v. Marden*, 546 N.W.2d 25, 27 (Minn. App. 1996). When setting a child support obligation, the district court "must decide whether to deviate or not deviate" from the presumptively appropriate guidelines, *In re Dakota Cty.*, 866 N.W.2d 905, 909 (Minn. 2015), and may do so to encourage prompt and regular support payments or to prevent the children and either parent from living in poverty, Minn. Stat. § 518A.43, subd. 1 (2014). When deviating from the presumptive guidelines, the district court must consider, among other factors: (1) the resources and circumstances of each party; (2) the extraordinary financial, physical, emotional, and educational needs of the child; and (3) the standard of living the child would have if the parents were living together. *Id.*, subd. 1(1)–(3). "A reviewing court affirms the district court's support determination if that determination has a reasonable and acceptable basis in fact." *Strandberg v. Strandberg*, 664 N.W.2d 887, 889 (Minn. App. 2003).

Appellant sought an upward deviation in child support from the district court, citing the children's standard of living during the marriage and respondent's financial resources. On appeal, appellant argues that the district court denied the request for a deviation without reasoning or explanation.

The district court correctly identified that appellant had the burden to demonstrate that the financial situations of the parties, the children's needs, and the standard of living of the children merited a departure. *Bunge v. Zachman*, 578 N.W.2d 387, 390 (Minn. App. 1998), *review denied* (Minn. July 30, 1998). The district court found that appellant had not met her burden of providing evidence that would merit a deviation from the child support guidelines. The district court noted that appellant was "seeking an upward deviation based on the historical spending for the children, and on [respondent's] ability to pay." But, the district court noted that respondent's expert "testified that the farming operation had a negative cash flow based upon the debt attributable to [respondent]." Contrary to appellant's assertion, the district court provided specific reasons for denying appellant's request for an upward deviation. On this record, the district court did not abuse its discretion in refusing to grant an upward deviation.

**IV.**

Appellant argues that the district court should have granted her request for attorney fees. At trial, appellant requested attorney fees based on both need and conduct. On appeal, appellant seems to challenge only the district court's denial of need-based attorney fees, as she notes that, in denying her motion for attorney fees, the district court

19

"suggest[ed] that the parties' cash flow did not demonstrate a need after consideration of the spousal maintenance and child support payments paid by [respondent] to [appellant]."

> [T]he court shall award attorney fees, costs, and disbursements in an amount necessary to enable a party to carry on or contest the proceeding, provided it finds:
>
> (1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;
> (2) that the party from whom fees, costs, and disbursements are sough has the means to pay them; and
> (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

Minn. Stat. § 518.14, subd. 1 (2014). The Minnesota Supreme Court has stated that appellate courts review an award of attorney fees for an abuse of discretion. *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999). *But see Geske v. Marcolina*, 624 N.W.2d 813, 816 n.1 (Minn. App. 2001) (noting a tension in supreme court caselaw regarding whether an attorney fee award under Minn. Stat. § 518.14, subd. 1, is mandatory or discretionary).

Appellant argues that her only access to funds to pay her attorney fees would be to encumber her real property and states that respondent has a much higher monthly income and has the ability to borrow money to pay her fees. Respondent counters that "the record shows that [r]espondent was burdened with substantial debt following the division of the property" and that there is no support in the record for the contention that respondent has the ability to obtain more operating debt in order to pay appellant's attorney fees. In denying appellant's motion for attorney fees, the district court considered the income of both parties, the fact that respondent is responsible for paying

for health insurance for the parties' minor children, and that "the marital assets and liabilities of the parties were equally divided in the prior court proceeding." The district court also observed that although respondent's monthly income was higher than appellant's income, respondent had spousal maintenance and child support obligations. Therefore, the district court concluded that both parties had the ability to pay their own legal fees. Given its consideration of the financial circumstances of both parties, the district court did not abuse its discretion in denying appellant's request for need-based attorney fees.

**Affirmed.**