*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1845**

In re the Marriage of:
David Scott Pederson, petitioner,
Respondent,

vs.

Elizabeth Joan Pederson,
Appellant.

**Filed August 15, 2016
Affirmed in part, reversed in part, and remanded
Bjorkman, Judge**

St. Louis County District Court
File No. 69DU-FA-14-123

David R. Oberstar, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, Minnesota (for respondent)

Jacquelyn S. Lutz, Robichaud & Alcántara, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Peterson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

In this marital-dissolution appeal, appellant argues that the district court: (1) abused its discretion in making its custody determinations, (2) improperly divided the marital debt, (3) denied appellant a fair trial, and (4) made a spousal-maintenance award not supported

by findings. We reverse and remand on the issue of spousal maintenance, but otherwise affirm.

**FACTS**

Appellant Elizabeth Joan Pederson and respondent David Scott Pederson were married in 1985. They have two adult children and two minor children. At the time of trial, the minor children were 12 and 15 years old.

On January 22, 2014, father petitioned for dissolution. Mother requested an order for protection (OFP) against father two weeks later. On February 11, the parties agreed to an OFP without findings that abuse occurred. The district court issued a temporary order granting both parties joint legal custody of the children, granting sole physical custody to mother, appointing a guardian ad litem, and directing father to deposit his paychecks into a joint checking account to cover household expenses.

On June 25, the district court appointed Bill Thompson as a parenting-time evaluator. Four months later, Thompson issued a report recommending that the parties share joint legal custody, mother have sole physical custody, and father have scheduled parenting time on weekends and holidays.

On January 29, 2015, the district court granted mother's request to continue the trial from February 3 to May 11. The district court further ordered Thompson to file any updated report at least 14 days prior to trial. On April 16, mother's attorney—Jeremy M. Hurd—moved the district court for leave to withdraw as counsel.[1] The district court

---

[1] Hurd was mother's second attorney.

granted Hurd's motion on April 20. Two days later, mother requested a trial continuance to allow her to obtain new counsel. On April 28, mother obtained a new attorney. The district court denied mother's repeated request for a new trial date, citing the age of the case (approximately 15 months), the fact that mother was on her third attorney, and the prior continuance.

Thompson submitted an amended report five days before trial. His new recommendations reflect father's return to Duluth and a change in the children's custody preferences. The 15-year-old child wanted to spend time equally between the parents; the 12-year-old wanted to reside primarily with father. Thompson also noted that father appeared "more willing to accommodate . . . mother than vice versa" and recommended that the district court order joint legal and physical custody.

During trial, the minor children were interviewed in camera. The 15-year-old stated that she preferred to spend equal time with each parent, but if mother did not agree with that, she wanted to live with father. The 12-year-old also stated that she wanted to spend equal time with each parent.

Thompson testified consistent with his reports. Mother objected to Thompson's amended report as untimely. The district court overruled the objection, stating that the late submission did not prejudice mother because she was able to cross-examine Thompson.

Vocational expert Jeanne Krizan testified that although mother was unemployed, her education and experience qualified her to immediately earn $20,000 to $25,000 per year. And Krizan opined that mother's annual income would likely increase to $28,000 to $30,000 within three years.

3

The dissolution judgment awards father sole physical custody of the minor children subject to mother's parenting time, and grants joint legal custody, with the exception that father was given sole authority to decide where the children would attend school. The district court awarded father the familial home subject to an equity distribution to mother's creditors. And the court ordered father to pay spousal maintenance of $1,000 per month for a period of four years, and to carry medical and dental insurance for the minor children and mother, with the mother's coverage limited to the same four-year period.

Mother moved for a new trial or amended findings, challenging many of the district court's findings of fact, arguing that she was denied a fair trial, and requesting need-based attorney fees. The district court partially granted mother's attorney-fee request but otherwise denied her motion. The district court amended the judgment to increase spousal maintenance to $1,600 per month, with the additional $600 to cover the cost of mother's insurance. Mother appeals.

**D E C I S I O N**

## I. The district court did not abuse its discretion in making its custody determinations.

When determining child custody, a district court shall consider the best interests of each child. Minn. Stat. § 518.17, subd. 3(a)(3) (2014). To determine a child's best interests, courts consider all relevant factors, including 13 delineated factors: (1) the wishes of the parents; (2) the preference of the child; (3) the child's primary caretaker; (4) the intimacy of the relationship between each parent and child; (5) the interaction of the child with members of the family or other individuals who may significantly affect the

4

child's best interests; (6) the child's adjustment to home, school, and community; (7) the length of time the child has lived in a satisfactory environment and the desirability of maintaining continuity; (8) the permanence of the existing or proposed custodial home; (9) the mental and physical health of all individuals involved; (10) the capacity and disposition of the parties to give the child love, guidance, and continue raising the child in the child's culture and religion; (11) the child's cultural background; (12) the effect on the child of the actions of an abuser; and (13) except in cases involving domestic abuse, the disposition of each parent to encourage and permit continuing contact with the other parent. Minn. Stat. § 518.17, subd. 1(a) (2014).

"The court may not use one factor to the exclusion of all others." *Id*. And "[t]he court must make detailed findings on each of the factors and explain how the factors led to its conclusions and to the determination of the best interests of the child." *Id*. When joint physical or legal custody is contemplated, four additional factors must be considered, including: (1) the ability of the parents to cooperate; (2) the methods for resolving disputes regarding major decisions concerning the child; (3) whether it would be detrimental to the child if one parent had sole authority; and (4) whether domestic abuse has occurred between the parents. *Id.*, subd. 2(b) (2014).

We review custody determinations to see "whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Zander v. Zander*, 720 N.W.2d 360, 365-66 (Minn. App. 2006), *review denied* (Minn. Nov. 14, 2006). The law "leaves scant if any room for an appellate court to question

the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000).

Mother argues that the district court misapplied the law because it failed to make the required best-interests findings. *See* Minn. Stat. § 518.17 (2014). Mother also asserts that the district court abused its discretion by giving father sole physical custody of the minor children and sole authority to make education decisions. We address each issue in turn.

**Adequacy of Findings**

The district court made extensive findings of fact in its dissolution judgment. And the court noted its legal obligation to evaluate the statutory best-interests factors. But mother contends that the district court erred because its detailed findings are not expressly linked to each best-interests factor. We are not persuaded.

In *Kremer v. Kremer*, 827 N.W.2d 454, 458 (Minn. App. 2013), *review denied* (Minn. Apr. 16, 2013), the father challenged the district court's custody determination, arguing that the district court failed to address all of the best-interests factors under Minn. Stat. § 518.17, subd. 1(a). This court affirmed, concluding that although the district court did not state how each finding of fact related to the factors, the findings were adequate because they encompassed each factor. *Kremer*, 827 N.W.2d at 458. And the district court specifically stated that it made its findings using the best-interests factors. *Id.*

Likewise, our careful review of the judgment demonstrates that the district court's findings of fact encompass all of the best-interests factors. The following findings of fact correspond to the 13 factors set out in Minn. Stat. § 518.17, subd. 1(a). Each parent

expressed a desire to have sole physical custody of the children (1). Each child stated that they would like to share time equally between the parents (2). Both parents "essentially co-parented their children" (3). Both parents have relationships with their children in separate capacities (4). Mother restricts the children's relationships with father, their adult sister, their aunt, and their grandmother (5) (13). The children will stay in Duluth in the familial home, and the only adjustment for schooling would be the potential decision to go to public school rather than private school (6) (7) (8). The only instabilities in the home environment flowed from mother's significant debts and her "hoarding" behavior (7).[2] The children have been provided for by both parents and will maintain their living environment by staying in the familial home (7) (8). Mother has "significant mental health issues that remain unresolved" (9). Both parents would encourage each child's cultural and religious backgrounds (10) (11). No objective evidence supports mother's abuse claims (12). And Thompson believed that father would be "much more willing to accommodate the mother than vice versa" (13).

Additionally, the district court made the following findings that correspond to the joint-custody factors established in Minn. Stat. § 518.17, subd. 2(b). Mother has not displayed the cooperation necessary to make a joint custody arrangement work (1). Although methods for resolving disputes were not specifically discussed, mother's lack of

_____

[2] Multiple trial exhibits show excessive clutter in the home, including significant amounts of cosmetic products. One of the parties' adult children testified that mother collected large amounts of clothing, piles of toys, and other "supplies" and "utensils." Father testified that mother incurred approximately $120,000 of debt related to cosmetic products, which was paid during the marriage.

7

financial wherewithal impedes her ability to make decisions regarding the children's schooling (2). Mother cannot accommodate father or co-parent in a way that would allow her to be the physical custodian of the children (1) (3). And there is no credible evidence of domestic abuse (4).

These findings, which the record supports, demonstrate that the district court considered all of the best-interests factors. And, as in *Kremer*, the district court stated that its custody determinations were "[b]ased upon the statutory factors." 827 N.W.2d at 458. Because the district court made detailed findings that embrace all of the best-interests factors, it did not "use one factor to the exclusion of all others." Minn. Stat. § 518.17, subd. 1(a). Although mother disagrees with how the district court presented its findings, we conclude that the district court did not misapply the law. Our analysis now turns to whether the district court otherwise abused its discretion in making its custody determinations.

**Legal Custody**

"Joint legal custody is presumed to be in a child's best interests." *Rosenfeld v. Rosenfeld*, 529 N.W.2d 724, 726 (Minn. App. 1995). "But joint legal custody should be granted only where the parents can cooperatively deal with parenting decisions." *Id.* (quotation omitted). Mother argues that the district court abused its discretion when it awarded the parties joint legal custody of the children, but gave father sole authority to decide whether the children would attend public or private school. We disagree.

In *Novak v. Novak*, the parties who shared legal custody disagreed about whether their child should be home schooled. 446 N.W.2d 422, 423 (Minn. App. 1989), *review denied* (Minn. Dec. 1, 1989). The district court granted the father's motion to enroll the

8

child in a public school or in a private school similar to the one the child previously attended. *Id*. We reversed and remanded because the district court based its decision on the parent's competing custodial rights rather than the child's best interests. *Id*. at 424.

Unlike *Novak*, the district court based its determination on the children's best interests. The district court specifically found that because father is responsible for education expenses, it is in the children's best interests to authorize father to decide whether to enroll them in private or public school. But mother challenges the district court's finding that she has a "complete lack of financial wherewithal," contending that because financial management is not an enumerated best-interests factor, the district court erred by considering it. We are not persuaded. The statute requires the district court to consider "all relevant factors." Minn. Stat. § 518.17, subd. 1(a). And because the decision whether to enroll the children in private or public school has significant financial implications, each parent's ability to manage finances is relevant. On this record, the district court did not abuse its discretion in giving father sole authority to decide which school the children will attend.

**Physical Custody**

Mother first asserts that the district court abused its discretion by awarding father sole physical custody because it was contrary to Thompson's recommendations. We disagree. A district court may make a custody order that is contrary to a parenting-time evaluator's recommendation if the district court's findings indicate a full consideration of the children's best interests. *Rutanen v. Olson*, 475 N.W.2d 100, 104 (Minn. App. 1991); *see also Pikula v. Pikula*, 374 N.W.2d 705, 712 (Minn. 1985) (stating that the district court

9

may disregard recommendations of a parenting-time evaluator if they are outweighed by other evidence). Within its extensive findings, the district court noted that Thompson recommended joint physical custody. But the district court found that this recommendation was outweighed by other evidence that favored giving father sole physical custody. And Thompson acknowledged that mother has not displayed the cooperation necessary to make joint custody work.

Mother next argues that the district court failed to properly consider the children's preference for equally dividing their time between each parent. This argument misstates the record. The district court, in fact, found that the children preferred an equal division of time. But these preferences implicated only one of the statutory best-interests factors. *See Imdieke v. Imdieke*, 411 N.W.2d 241, 242 (Minn. App. 1987) (stating that the preference of a minor child is just one factor to consider and is not necessarily determinative of final placement), *review denied* (Minn. Oct. 30, 1987). And, as previously noted, the district court considered all of the required best-interests factors.

Finally, mother contends that the district court's findings are flawed because they omit all positive facts about her, and all negative facts about father. Again, the record belies mother's argument. In many findings of fact, the district court recognizes mother's significant contributions in raising and parenting the children. The children's preference to spend equal time with each parent—a positive factor for both mother and father—is also noted. Mother provides no authority for her argument that a district court must make findings on every positive or negative aspect of each parent to determine custody. The district court is only required to address the best interests of the children. Minn. Stat.

10

§ 518.17, subd. 3(a)(3). Because the district court considered the statutory factors and its findings are supported by the record, we conclude it did not abuse its discretion by awarding sole physical custody to father.

## II. The district court did not abuse its discretion in dividing the marital debt.

"Upon a dissolution of a marriage . . . the court shall make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property." Minn. Stat. § 518.58, subd. 1 (2014). The district court's findings shall be based on all relevant factors including:

> the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party.

Minn. Stat. § 518.58, subd. 1. "The [district] court shall also consider the contribution of each [party] in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker." *Id.* "An equitable division of marital property is not necessarily an equal division." *Crosby v. Crosby*, 587 N.W.2d 292, 297 (Minn. App. 1998), *review denied* (Minn. Feb. 18, 1999). The district court has broad discretion in the division of marital property, including debt, and we will affirm the decision if it has an acceptable basis in fact and principle. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002).

Mother challenges the assignment of $64,288 in credit-card debt to her. The district court assigned credit-card debt to the holder of each credit-card account. Mother does not dispute that she held the credit-card accounts that were assigned to her, or that she incurred

11

the associated debts. Instead, she argues that the district court improperly assigned credit-card debts to her based on marital misconduct, specifically, failing to manage her finances prudently. This argument is unavailing.

The district court expressly found that the credit-card debt mother incurred did not benefit father or the children. This is a legitimate basis for assigning that debt to mother. *See* Minn. Stat. § 518.58, subd. 1 (stating that the district court shall consider factors such as a spouse's contribution to the preservation of marital property when dividing the property); *Jones v. Jones*, 402 N.W.2d 146, 149 (Minn. App. 1987) (upholding apportionment of debt to husband that had "no ostensible relation to [wife]"). Simply because mother's accumulation of substantial debt after the parties' separation (and while father was under court order to pay household expenses) can also be characterized as marital misconduct does not mean that the district court's debt allocation was improper. On this record, we discern no abuse of discretion.

## III.    Mother received a fair trial.

Mother argues that she was denied a fair trial because the district court denied her continuance request and displayed bias against her. We are not persuaded.

### Trial Continuance

A district court's decision whether to continue a trial will not be reversed absent a clear abuse of discretion. *Jones*, 402 N.W.2d at 149-50. "The test is whether a denial prejudices the outcome of the trial." *Id.* at 150. An attorney's withdrawal does not create a right to continue a trial. Minn. R. Gen. Pract. 105.

12

Mother argues that the district court should have continued the trial because she had just retained new counsel and Thompson's amended report was untimely. We disagree. First, mother retained experienced replacement counsel 13 days before trial. As the district court noted, the case had been pending for approximately 15 months, mother was on her third attorney, and the trial had already been continued once at mother's request. And apart from her bald assertion of "extreme" prejudice, mother fails to explain why her new attorney was unable to prepare for trial.

Second, Thompson submitted his updated report five days before trial. While the district court had ordered him to do so at least 14 days prior to trial, we discern no resulting prejudice. The amended report was limited (three pages) and mother was able to cross-examine Thompson at trial. And aside from generally stating that she was forced to present her case unprepared, mother fails to describe how the outcome of the trial would have been different if a continuance had been granted. *See Toughill v. Toughill*, 609 N.W.2d 634, 638 (Minn. App. 2000) (stating that party seeking relief on appeal must show prejudicial error by the district court). On this record, we discern no abuse of the district court's discretion.

**Judicial Bias**

A judge shall perform all of his duties without bias or prejudice. Minn. Code Jud. Conduct Rule 2.3(A). To require reversal, judicial bias must originate from an extrajudicial source, *In re Estate of Lange*, 398 N.W.2d 569, 573 (Minn. App. 1986), or be pervasive, which is conduct that is "so extreme as to display [a] clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551, 114 S. Ct. 1147, 1155 (1994). We

13

presume that judges approach cases with a neutral and objective disposition. *State v. Burrell*, 743 N.W.2d 596, 603 (Minn. 2008). Mother raises the issue of judicial bias for the first time on appeal. Although we generally do not consider issues that were not presented to the district court, *Roby v. State,* 547 N.W.2d 354, 357 (Minn. 1996), we do so here in light of our limited remand.

Mother asserts that the district court displayed bias by (1) repeatedly noting her mental instability and hoarding behavior, (2) deciding evidentiary issues in father's favor, and (3) making numerous findings of fact that favor father. We disagree. Contrary to mother's suggestion, the district court's findings regarding her mental-health issues do not reveal an inappropriate effort to diagnose her condition. Rather, they relate to the best-interests factors relevant to the custody determinations. Minn. Stat. § 518.17, subds. 1, 2.

The contention that the district court's evidentiary rulings and witness questioning demonstrate judicial bias likewise fails. Adverse rulings alone are not a basis for imputing bias to a judge. *See Olson v. Olson,* 392 N.W.2d 338, 341 (Minn. App. 1986). And the record reflects that the district court asked only one of mother's witnesses clarifying questions about a potential violation of the existing OFP. Such questioning is well within the discretion of the district court. *See Sheeran v. Sheeran*, 401 N.W.2d 111, 115 (Minn. App. 1987) ("It is within the discretion of the [district] court to question a witness called by a party."). And without actual legal argument explaining how the district court abused its discretion in its evidentiary rulings, we cannot conclude that the accumulation of these evidentiary rulings constitutes judicial bias.

14

Finally, mother's argument that the district court's findings reflect bias in favor of father also lacks merit. At its core, this argument challenges the sufficiency of the evidence. As such, the argument misses the mark for two reasons. First, the record supports the challenged findings. For example, mother asserts that the record contradicts the district court's finding that she violated the order to pay household expenses from the paycheck father was required to deposit into their joint checking account during the pendency of the dissolution proceeding. She points to evidence that father withdrew money from the checking account shortly after depositing his paychecks. But the district court's finding is supported by father's testimony that he paid the bills because mother failed to do so. Similarly, the challenged finding that mother is a hoarder is supported by photographs taken of the family home and testimony provided by one of the parties' adult children. Second, even if these findings were clearly erroneous, it would not establish judicial bias. *See Peterson v. Knutson*, 305 Minn. 53, 60, 233 N.W.2d 716, 720 (1975) (stating that even a "fundamentally erroneous" district court ruling does not necessarily show judicial bias).

We note that certain language in the dissolution judgment, including the characterization of mother as a "train wreck," is unnecessary and inappropriate. But such language does not establish that the district court was biased. *See Liteky*, 510 U.S. at 555-56, 114 S. Ct. at 1157 (stating that expressions of impatience, dissatisfaction, or anger do not establish bias). In sum, there is no evidence of pervasive judicial bias in this case.

15

**IV.**   **The district court did not make sufficient findings regarding spousal maintenance.**

Spousal maintenance may be awarded if a spouse demonstrates that she does not have sufficient property to provide for her reasonable needs or cannot reasonably provide adequate self-support.  Minn. Stat. § 518.552, subd. 1 (2014); *Robert v. Zygmunt*, 652 N.W.2d 537, 544 (Minn. App. 2002), *review denied* (Minn. Dec. 30, 2002).  Such awards must be in an amount and duration that the district court deems just after considering: (1) the ability of the recipient to provide for her needs independently, (2) the time to acquire education or training to become self-supporting, (3) the standard of living during the marriage, (4) the duration of the marriage and the depreciation of a homemaker's skills or experience, (5) earnings and opportunities forgone by the recipient, (6) the age and health of the recipient, (7) the resources of the obligor, and (8) the contribution of both parties to the preservation of  marital property, and the contribution of a homemaker to the other spouse's employment.  Minn. Stat. § 518.552, subd. 2 (2014).  "[T]he district court is not required to make specific findings on every statutory factor if the findings that were made reflect that the district court adequately considered the relevant statutory factors." *Peterka v. Peterka*, 675 N.W.2d 353, 360 (Minn. App. 2004).  We review a district court's spousal-maintenance award for an abuse of discretion.  *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997).

Mother correctly points out that the district court did not make findings regarding her reasonable monthly expenses, the marital standard of living, and whether the spousal-maintenance award will adequately provide for her reasonable needs.  We recognize that

16

the district court's finding regarding father's ability to pay spousal maintenance may be a limiting factor. *See* Minn. Stat. § 518.552, subd. 2(g) (stating that an obligor's ability to meet his or her needs while also meeting the needs of the other spouse is relevant to a spousal-maintenance award). But without findings regarding mother's monthly expenses, her reasonable needs, and the marital standard of living, we are unable to determine whether the district court considered the relevant statutory factors. *See Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989) (reversing and remanding a maintenance award because it lacked adequate supporting findings of fact); *Cummings v. Cummings*, 376 N.W.2d 726, 731 (Minn. App. 1985) (stating that without specific findings as to a recipient's reasonable expenses, "it is impossible to review whether [mother] meets the standards set forth in [Minn. Stat. § 518.552]."). Accordingly, we remand for additional findings and for a recalculation of spousal maintenance. We leave to the district court the decision whether to reopen the record on remand.

**Affirmed in part, reversed in part, and remanded.**